## Ashland Transfer Co. et al. v. State Tax Commission et al.
## Aetna Oil Service v. Same.

(Decided Dec. 16, 1932.)

146

LESLIE MORRIS for appellants.

BAILEY P. WOOTTON, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

These two consolidated actions, separately filed in the Franklin circuit court by the respective appellants, as plaintiffs below, against the State Tax Commission, its members, and other related administrative boards

and their members, present the question of the constitutionality of chapter 106 of the Acts of 1932, which is on page 537 of the Session Acts for that year. Its title reads: "An act to further regulate motor-trucks, semi-trailer trucks, semi-trailers and trailers to enlarge the powers of the State Highway Commission, County Courts, and cities and incorporated towns in respect thereof, to provide for enforcement of the act and penalties for violation thereof, and repealing all laws inconsistent therewith," and from which it will be seen that it is confined to the regulation of the use on the public highways of the commonwealth of motortrucks carrying freight or merchandise, and has nothing to do with privately owned automobiles not so employed, nor to passenger busses which are operated on the public roads as carriers of passengers.

The plaintiff in the first case in the caption is strictly a common carrier, while the one in the second case is engaged in carrying its own freight or merchandise, and they each operate in both interstate and intrastate transportation. In their petitions they attack certain provisions of the statute upon the grounds (a) that they are arbitrary and confiscatory, and by reason of which plaintiffs, if subjected to the attacked provisions, would be deprived of their property without due process of law, and would also be deprived of the equal protection of the law contrary to provisions in the Federal Constitution (Amendment 14); and also upon ground (b) that section 12 and subsection (c) of section 13 of the act delegate legislative powers to the State Highway Commission and to the various county judges of the state in exercising supervision in the application of the provisions of the statute to state and county roads. Defendants by appropriate motions and pleadings combated each of those contentions, and upon submission the trial court denied the relief sought by plaintiffs in their petitions and dismissed them, and to reverse that judgment they prosecute this appeal.

The arguments in support of ground (a) are not recent or new ones, since it has become, especially in recent years, quite common for litigants to employ such "conventional methods of presenting constitutional questions" in efforts to nullify statutes when they (generally utilities companies) are restrained by the attacked statute from operating their business contrary

to their unqualified desires; and in the majority of cases it is upon the theory either that the right of the particular regulation does not exist at all, or, if it does, that some one else is a better judge of the limitations imposed than is the Legislature. The attacked act defines motortrucks, trailers, and semi-trailers, and prescribes their maximum length, loaded weight, height, etc., and forbids altogether the use of a trailer ''on any highway.'' The maximum load is 18,000 pounds; the maximum height is 11½ feet; the maximum width is 96 inches. The maximum length of a motortruck alone is 26½ feet, and of a semi-trailer truck not exceeding 30 feet. Other sections provide a limitation of speed as applicable to transportation both in and out of incorporate towns, and exempts certain trucks operating within incorporated towns, and named radius distances around it, from certain provisions of the act.

It is argued in support of ground (a), (1) that some of the prescribed maximum limitations, and especially the ones as to the length and width, are arbitrary, and their application would operate to confiscate the property of plaintiffs, since the trucks they are now operating exceed those limitations; (2) that the act is unconstitutional because subsection (d) of section 13 postponed the application of the maximum weight for trucks operated over the highways until January 1, 1933, and did not postpone the enforcement of the enacted maximum length of trucks and semi-trailer trucks; and (3) that the imposition of the regulations of the act would impair the obligations of plaintiffs' contracts with patrons for the carriage of freight, and the one which they claimed to have with the commonwealth by virtue of their complying with the license statutes and other regulatory measures under prior statutes, which the attacked act superseded. Other more detailed objections are made in support of ground (a), but they are of far less merit than the three we have mentioned, and are not strenuously urged in brief of counsel.

The authority which is embraced within what is known as the ''police power'' of a state or government is sometimes difficult to define; but all possess it, and its exercise is, perhaps, the most useful power that a government employs in the administration of the public affairs of the state for the protection of its citizens.

We are concerned in this case only with public highways. Their regulation, maintenance, and protection, as well as the safety of travelers upon them, is everywhere and by all courts conceded to be within the police power of the jurisdiction maintaining them. Such regulatory authority in the exercise of the state police power may also apply to and operate upon nonresidents or those engaged exclusively in interstate commerce, as well as those engaged in intrastate commerce, and especially so when the field of regulating interstate commerce by highway traffic has not been taken over by the federal Congress, and which latter is true at this time. Hence, in the case of Continental Baking Co. v. Woodring (D. C.) 55 F. (2d) 347, 351, the court, in passing upon questions similar to those we have in this case, said: "It is likewise settled that such users, although nonresidents and although engaged exclusively in interstate commerce, may be required to contribute to their (highway) cause and upkeep. The highways are public property," etc.

All of the provisions of the Kansas act were upheld in that opinion, and an appeal was prosecuted to the Supreme Court of the United States where the judgment of the trial court was affirmed in the case of the same style reported in 286 U. S. 352, 52 S. Ct. 595, 598, 76 L. Ed. 1155. The opinion of the Supreme Court was written by Chief Justice Hughes, and in it he approvingly incorporated a part of the trial court's opinion, saying: "The state of Kansas has constructed at great expense a system of improved highways. These have been built in part by special benefit districts and in part by a tax on gasoline sold in the state and by license fees exacted of all resident owners of automobiles. These public highways have become the roadbeds of great transportation companies, which are actively and seriously competing with railroads which provide their own roadbeds; they are being used by concerns such as the plaintiffs for the daily delivery of their products to every hamlet and village in the state. The highways are being pounded to pieces by these great trucks which, combining weight with speed, are making the problem of maintenance well-nigh insoluble. The Legislature but voiced the sentiment of the entire state in deciding that those who daily use the highways for commercial purposes should pay an additional tax.

Moreover, these powerful and speedy trucks are the menace of the highways."

To the same effect is the case of Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 585, 76 L. Ed. 1167; the opinion being written by the same distinguished Chief Justice. The case involved a similar regulatory statute enacted by the Legislature of the state of Texas, and to which similar constitutional objections were interposed. But in answering and denying all of them the court said: "In exercising its authority over its highways the state is not limited to the raising of revenue for maintenance and reconstruction, or to regulations as to the manner in which vehicles shall be operated, but the state may also prevent the wear and hazards due to excessive size of vehicles and weight of load. Limitations of size and weight are manifestly subjects within the broad range of legislative discretion. To make scientific precision a criterion of constitutional power would be to subject the state to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure. Ohio Oil Co. v. Conway, 281 U. S. 146, 50 S. Ct. 310, 74 L. Ed. 775. When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome. Standard Oil Co. v. Marysville, 279 U. S. 582, 586, 49 S. Ct. 430, 73 L. Ed. 856; Price v. Illinois, 238 U. S. 446, 452, 453, 35 S. Ct. 892, 59 L. Ed. 1400; Hadacheck v. Sebastian, 239 U. S. 394, 410, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; Euclid v. Ambler Realty Co., 272 U. S. 365, 388, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works, 274 U. S. 325, 328, 47 S. Ct. 594, 71 L. Ed. 1074. Applying this principle, this Court in Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966, sustained the regulation of the highway commission of Oregon, imposed under legislative authority, which reduced the combined maximum weight in the case of motor trucks from 22,000 pounds, which had been allowed under prior regulations, to 16,500 pounds. See, also, Carley & Hamilton v. Snook, 281 U. S. 66, 73, 50

S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194. The requirement in Morris v. Duby, related to the gross road limit, but we know of no constitutional distinction which would make such legislation appropriate and deny to the state the authority to exercise its discretion in fixing a net load limit. We agree with the District Court that the limitation imposed by section 5 of the statutes does not violate the due process clause.''

In answering the contention that the state of Texas in that case illegally attempted to exercise police jurisdiction over interstate truck operators, the opinion, quoting from the case of Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 550, 71 L. Ed. 966, said: ''An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the state its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.''

To the same effect are the cases of Hodge Drive-It-Yourself Company v. Cincinnati, 284 U. S. 335, 52 S. Ct. 144, 76 L. Ed. 232; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Hendrick v. Maryland, 235 U. S. 611, 35 S. Ct. 140, 59 L. Ed. 385; Silver v. Silver, 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221; Morris v. Duby, supra. A great number of other Supreme Court opinions and a still larger number of inferior federal court opinions could be cited sustaining the right of a state to regulate under its police power traffic upon its publicly maintained roads, and to enforce such regulatory provisions even against interstate carriers, and especially so in the absence of such regulation by the federal Congress. An equal number of cases from this court to the same effect could be cited, but we will content ourselves with referring to only City of Newport v. Merkel Brothers Co., 156 Ky. 580, 161 S. W. 549; Blox-

ton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392; Slusher v. Safety Coach Transit Company, 229 Ky. 731, 17 S. W. (2d) 1012, 66 A. L. R. 1378; Blue Coach Lines v. Lewis, 220 Ky. 116, 294 S. W. 1080; and Shorty's Bus Line v. Gibbs Bus Line, 237 Ky. 494, 35 S. W. (2d) 868. It is therefore apparent that the right of Kentucky to regulate traffic upon its public roads, as the attacked act seeks to do, is universally recognized without exception, and, unless in doing so it infringes upon some federal or state constitutional provision, it must prevail.

We have seen from the excerpt from the Sproles opinion that regulations as to the size, weight, height, etc., "are manifestly subjects within the broad range of legislative discretion," and that "to make scientific precision a criterion of constitutional power would be to subject the state to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure." In other words, the law, as universally declared by both state and federal courts is, that such regulatory acts will be upheld and enforced in all cases where they are confined to what is termed "reasonable" regulation, and that neither exact precision nor even scientific calculation is essential to reasonability. In so concluding it is not necessary to rely on the doctrine that the state of Kentucky could entirely prohibit transportation of freight upon its publicly maintained highways, although that right is declared to exist in the Slusher Case, supra, and there is nothing to the contrary in the Sproles Case, nor the Kuykendall Case, nor the case of Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 327, 69 L. Ed. 627, with reference to interstate traffic, since all that those opinions said on that subject was that the state would have no right to deny an exclusively interstate carrier the use of its highways while it permitted the same use under same conditions by similar intrastate carriers. Plaintiffs in this case are both interstate and intrastate carriers, and the statute makes no discrimination against them because of either character of commerce in which they are engaged. Indeed, all the cases to which we have referred, and also many others, acknowledge the undeniable fact that an interstate carrier may destroy the roads of a

state, and may produce as much danger to traffic thereon to the same extent as an intrastate carrier may do.

The contention made in subdivision (3), supra, of ground (a), is answered contra by the opinion in the Sproles Case in this language: "Contracts which relate to the use of the highways must be deemed to have been made in contemplation of the regulatory authority of the State." To the same effect is the opinion in the case of Stephenson v. Binford, 53 S. Ct. 181, 77 L. Ed. — , and it will receive no further discussion by us. We think the cases to which we have referred dealing with the question of the right of the state of Kentucky to regulate traffic upon its public roads, whether maintained by the state or by a county, answers all arguments advanced in support of ground (a), supra, and that the trial court properly overruled each and all of them.

Ground (b), as we have seen, is leveled against section 12, and subsection (c) of section 13 of the attacked act. The first one confers power and authority upon the State Highway Commission with reference to *state* roads and upon county judges with reference to *county* roads, to reduce the maximum limit of loads and speed, as prescribed in sections 3 and 7 of the act, so as to meet contingencies and conditions that it would be practically impossible for the Legislature to enumerate and prescribe with precision and exactness. It is prescribed in that section that such authority may be exercised whenever in the judgment of those agencies "any road or part thereof, or any bridge or culvert, shall, by reason of its design, deterioration, rain or other climatic or natural causes, be liable to be damaged or destroyed by motor-trucks or semi-trailer trucks, if the gross weight or speed thereof shall exceed the limits prescribed in said notice," and which may be done even to the prohibition in whole or in part of such operation "for limited periods or specified days, or parts of days, whenever, in its or their judgment, such regulation or prohibition is necessary to provide for the public safety and convenience on said highways or roads, or part thereof, by reason of traffic density or intensive use thereof by the traveling public." But, when such regulatory action is taken and before it becomes effective, notice thereof "shall be posted at conspicuous places at the termini of and at all intermediate crossroads

and road junctions with the section of road to which said notice shall apply.''

The argument of plaintiffs' counsel is twofold, (x) that the permission therein given to the highway commission and to county judges is legislative in character, and which under our constitutional form of government it is incompetent for the Legislature to delegate, and (y) that, if mistaken in contention (x), then the standards that the statute erects for the measuring of the delegated authority to such agencies in taking such action is too indefinite, and has the effect to confer upon them arbitrary power from which the statute furnishes no appeal, and for which it is contended there is no legal remedy. Our task, therefore, is to determine whether or not those contentions are correct, notwithstanding neither plaintiff presents by its pleadings a situation wherein either of them will be molested because of such provision. The same question was made in the case of Union Bridge Company v. United States, 204 U. S. 365, 27 S. Ct. 367, 373, 51 L. Ed. 523, in which the universal rule is recognized that neither Congress nor a state Legislature may delegate legislative powers to an administrative or executive officer. But at the same time it was most emphatically asserted that it is competent for a legislative body in framing a statute to delegate to such executive or administrative officers *regulatory* powers by which they are authorized and empowered to find facts and determine conditions to which the law may or may not apply. In that (last cited) case Judge Harlan, speaking for the court, stated the rule as taken from Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716, thus: " 'To assert that a law is less than a law because it is made to depend on a future event or act is to rob the legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to fully know.' Tne proper distinction, the court said, was this: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking

power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.' "

The same principle was approved in the case of Mutual Film Corporation v. Industrial Commission, 236 U. S. 230, 35 S. Ct. 387, 392, 59 L. Ed. 552, Ann. Cas. 1916C, 296, in which Justice McKenna, writing for the court, said: "While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution." An additional and very recent case (decided December 5, 1932) in which the questions herein discussed were involved in respect to a highway statute of Texas is J. H. Stephenson et al. v. T. Binford et al., 53 S. Ct. 181, 77 L. Ed. — . That opinion substantiates the principles we have so far discussed, and upholds provisions of the Texas statute analogous and similar to those contained in our statutes.

In the recent case of Alton & Southern R. Co. v. Vandalia R. Co., 268 Ill. 68, 108 N. E. 800, 804, in discussing the same authority given to the Public Utility Commission of that state, and to which the same objection was made, the court said: "While the Legislature cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Fish v. McGann, 205 Ill. 179, 68 N. E. 761. To hold that whatever the Legislature may do it shall do in every detail, or else the thing shall go undone, would be to practically destroy government. * * * While the Legislature cannot divest itself of its proper function or delegate its legislative authority, it may still designate others to do those things which it can appropriately, yet cannot understandingly or advantageously, do itself."

In the case of Cincinnati, Wilmington & Zanesville R. Co. v. Clinton County Com'rs, 1 Ohio St. by Geo. W.

McCook, page 77, Judge Ranney, speaking for the court on this subject, said: "The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." Many other cases of similar import from foreign jurisdictions could be cited, but their tenor and effect are in complete accord with those to which we have referred and from which we have taken the inserted excerpts.

Two comparatively recent domestic cases adopted and approved the same principle, and which are, Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, 831, and Bloxton v. State Highway Commission, 225 Ky. 324, 8 S.W. (2d) 392. Others are referred to in those opinions. We take this excerpt from the first one: "It must not be overlooked that Legislatures are not continuous bodies. As a rule, they are in session for only a few days each year, or every two years, as is the case in Kentucky. Of necessity such bodies cannot undertake to determine all facts incident to the administration of the laws which they enact. Therefore when we say that the Legislature may not delegate its powers, we mean that it may not delegate the exercise of its discretion as to what the law shall be, but not that it may not confer discretion in the administration of the law itself."

The court in that case had under consideration the validity of a statute establishing normal schools in Murray and Morehead, Ky. The statute, among other provisions, enacted in general terms that the school should be maintained and operated by "the State Board of Education" without giving any standards by which its action in the matter could be measured. But the statute was upheld under the principles contained in the excerpt from that opinion. The Bloxton opinion is to the same effect, and we will not incumber this one with excerpts therefrom. Other cases could be cited, both domestic and foreign, in complete accord with the inserted excerpts, but we deem it unnecessary to do so, since there is no dissent. It is true that in some opinions of courts of last resort (some of which are cited by counsel for appellants) the particular provisions overstepped the powers of strict administration and

encroached upon the domain of legislation, and, when done, it was met with disapproval by the courts. However, the disposition in more recent times has been to regard such provisions less critically and to classify them as regulatory ones wherever possible instead of legislative in character. That situation has been brought about by radical changes in conditions, and which in turn were produced by rapidly accumulating inventions, both luxuriant and useful, whereby the conduct of human affairs has become almost revolutionized. So much so that it would be practically impossible for the Legislature in performing its task of adjustment to do more than to construct a framework for the statute and delegate to its administrators the power under regulatory provisions to complete the structure by dealing with the multitude of details. No better illustration of that situation could be given than the one that this case presents. The Legislature could not tell in advance, nor could it know when the roads of the state would become in such condition that they could not carry the maximum loads, nor be subjected to the maximum speed without destroying them, or possibly without great danger to the traveling public. Hence the act left such matters to the sound discretion of the highway commission and the various county judges for determination, and then enacted that, when such determination was made, those agencies in the exercise of their delegated regulatory power might so proclaim. We therefore conclude that argument (x) cannot be sustained.

The alleged insufficient standards as contained in argument (y) are: That the regulation provided for in the section shall be made by the highway commission (or the county judge as to county roads) whenever any road or part thereof, or any bridge or culvert, shall, because of design or by reason of deterioration, rain, or other climatic conditions, become liable to be damaged or destroyed by the use of motortrucks traveling at the maximum speed and with maximum load, and by reason thereof the enacted regulation or provision becomes necessary in order to protect the public safety and convenience on the highways, as well as to prevent their destruction and afford an opportunity to repair them. Notice of such enforcement is provided for, and under the cases, supra, it would be difficult to conceive how the Legislature could have constructed more definite

158

and particular standards for the guidance of the two agencies to which the delegation is made. It will no doubt be conceded that, when reconstructing or repairing a road, power and authority exists to entirely prohibit traffic over that portion or section that is being repaired, and it is difficult for us to distinguish between that power and the right to regulate the traffic, even below the limitations of the statute, when the condition of the road (including bridges), as well as the safety of the traveling public, requires it. Such a situation might be brought about by climatic or other conditions suddenly occurring, or at times and places that the Legislature could not foresee. It was therefore imperatively essential that the determination of such facts, to be followed by the authority conferred, should be delegated to that agency having the administrative management and control of the highways, and the cases, supra, with all others we have consulted, completely sustain the right of the Legislature to do so.

The Texas road law that was attacked in the Sproles Case, supra, contained, to our minds, no more certain standard measuring the exercise of the delegated duties therein than does the act herein attacked. Neither was there any more definiteness contained in the statutes involved in the Craig and Bloxton domestic cases, supra, wherein public agencies were delegated administrative powers. The Texas statute under consideration in the Sproles Case authorized the exercise of the delegated power by the highway commission when the transported commodity was of oversize or overlength and could not be reasonably dismantled, and it was upheld as not being vague or indefinite. In the case of Contract Cartage Co. v. Morris (D. C.) 59 F. (2d) 437, 446, where the Illinois road law was before the federal court, the same question was presented, and the measuring language of the delegated authority there was: ''Such permits may be granted in the discretion of the highway or street officials when in their opinion an emergency exists warranting the granting of the permit.'' The permit was limited to designated periods not to exceed ten days each. That measuring standard for the exercise of the delegated discretion was and is much more general than either the language of section 12 or of subsection (c) of section 13 of our act under consideration. Yet the court denied the attack of the statute on that ground, and in doing so said: '' 'It

would be almost impossible to state in an ordinance or law every condition or set of circumstances wherefrom an emergency might be said to arise or exist.' No law can cover all possible situations. A large measure of discretion and judgment must be left to those charged with executive and administrative duties. The statute indicates the general policy of the government and has left to the administrative officers, within narrow limits, to administer the details so as to make the law practically effective. Sproles v. Binford, supra.'' To the same effect is the case of City of Chicago v. Marriotto, 332 Ill. 44, 163 N. E. 369, 60 A. L. R. 501, and Morris v. Duby, supra.

Pages of citations of cases could be made to the same effect, but to do so would add nothing to the universality of the declared rule. It is aptly stated in the Mutual Film Corporation Case, supra, in this language: ''The exact specification of the instances of their application would be as impossible as the attempt would be futile. Upon such sense and experience, therefore, the law properly relies. * * * If this were not so, the many administrative agencies created by the state and national governments would be denuded of their utility, and government in some of its most important exercises become impossible.''

It has already appeared that the same authorities also apply to the attack made on subsection (c), section 13, of the act upon the same ground. Under that section the State Highway Commission is authorized and empowered to permit excess limitation as to load, length, etc., above those prescribed by the statute in situation set forth in that subsection, but which plaintiffs say are too general and vague, and for that reason vest arbitrary power in the highway commisison. Such permits are required to be prescribed by general rules and regulations of the commission, and are not to be given or withheld as it sees proper in each individual case. The required rules and regulations operate on all applicants alike, and they are required to be based upon the necessity of granting such permits ''for special purposes,'' for ''stated periods,'' to meet ''unusual conditions,'' and with the view of conserving the interest of public safety, and the preservation of the highways. The ''special purposes'' and ''unusual conditions'' are to be determined by the highway commis-

sion, having regard for the safety of the public and the preservation of the roads. While the statute does not employ the word "emergency," yet it describes one, and which is a situation or condition brought about unexpectedly and not usually happening. Of course, it is known and was understood that the power and authority conferred by the subsection on the highway commission was inserted so as to permit the transportation of freight composed of articles that in their very nature could not be brought within the limitations of the act; and therefore could not be transported at all, unless such permits were given. But, as we have seen, the very terms of the statute provide against arbitrary action on the part of the commission by requiring it to promulgate rules and regulations applicable to all alike.

Two well-considered cases, in addition to those already cited, sustaining the principles herein announced, are Wisconsin Telephone Co. v. Public Service Commission of Wisconsin, 206 Wis. 589, 240 N. W. 411, and United States v. Shreveport Grain & Elevator Co., 53 S. Ct. 42, 77 L. Ed. — . Counsel cite and rely on a number of domestic cases which he contends support his position, three of the most prominent of which are Slaughter v. Post, 214 Ky. 175, 282 S. W. 1091; Lovell v. Town of Mt. Vernon, 215 Ky. 143, 284 S. W. 1025; and Matthews v. Murphy, 63 S. W. 785, 23 Ky. Law Rep. 750, 54 L. R. A. 415. But an examination of those cases will reveal that the denounced provision of the statutes and ordinances there involved vested in the administrative agencies charged with their enforcement absolute and arbitrary power with no enacting guiding conditions, an illustration of which may be found in all of that class of cases relating to granting of building permits wherein the one granting the permit was given no guiding rule except his willingness or unwillingness to do so. Besides, the statutes and ordinances involved in those cases related exclusively to private rights and not to the regulation of the use of public property. Also it may be true that some of them may have gone beyond the correct rule measuring the validity of such provisions. At any rate, the authorities to which we have referred deal with the regulation of public utilities and public highways, and from them it will be seen that, because of the complexity of the facts entering into their proper administration, the courts have shown a disposition to uphold such delegated regulatory pro-

visions whenever it was possible to do so, and to somewhat relax the early rule on that subject. Likewise we are admonished that in all cases of doubt as to the legality of a statute it should be resolved by the courts in favor of, and not against the right of, the Legislature to enact it.

But it is said that no right of appeal from any ruling of the highway commission or any county judge is provided for in the act, and for which reason any arbitrary action that might be taken would be without remedy. But such a result does not necessarily follow. In the case of Stanley v. Fiscal Court, 189 Ky. 390, 224 S. W. 1081, 1082, we held that one complaining of a statute which denied the right of appeal was not without remedy against arbitrary action, since "he may protect his rights by an appropriate proceeding, where the fiscal court acts corruptly or arbitrarily." That case was referred to with approval in the later one of Henderson v. Commonwealth, 199 Ky. 795, 251 S. W. 988, and the general right of a court of equity to protect and preserve rights against arbitrary action, and to preserve due processes of law, is fully set forth in the text in 6 R. C. L. 442, sec. 438.

It might not be amiss to add that, if section 12 or subsection (c) of section 13, or both of them, were invalid, it would not operate to destroy the entire act because of its section 22, which says: "The provisions of this act are severable, and if any of its provisions shall be held unconstitutional or void, the remaining provisions shall continue in full force and effect, it being the legislative intent that this act would have been adopted had such unconstitutional or void provision not been included therein." The terms of that provision are broad enough to prevent the operation of the sometimes applied rule that an entire statute will be declared invalid when a particular section or provision thereof is found to be so, and when the court concluded that the Legislature would not have enacted the statute without the illegal provision or section. The severalty clause, supra, of the statute involved herein expressly states that it was the legislative intent to adopt the remaining portions of the act, notwithstanding the invalidity of some part thereof.

Learned counsel for appellees urge upon us to construe the sections relative to the collection and dispo-

sition of fines assessed for violations of the statute; but no question of that kind is presented, and, in the absence thereof, we are entirely without authority to speak judicially upon it.

Wherefore the judgment is affirmed, the whole court sitting.