STATE *v.* BLANCHE RETOWSKI.

(OCTOBER 25, 1934.)

LAYTON, C. J., and REINHARDT, J., sitting.

*P. Warren Green,* Attorney-General, for the State.

*Francis A. Reardon* for defendant.

Court of General Sessions for New Castle County, No. 88, September Term, 1934.

332

LAYTON, C. J., delivering the opinion of the Court:

While it is a maxim of constitutional law that the power conferred upon a legislature to make laws cannot be delegated by that department to any other body or authority, 1 *Cooley, Cons. Lim.* (*8th Ed.*) 224, it is equally well settled that a legislature, in enacting a law, complete in itself, designed to accomplish the regulation of particular matters, may expressly authorize an administrative body,

within definite limits, to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose. 12 *C. J.* 845; 6 *R. C. L.* 178.

Chief Justice Marshall, in *Wayman v. Southard,* 10 *Wheat.* 42, 6 *L. Ed.* 262, drew the distinction between the important matters which are for legislative regulation exclusively and those matters of less interest as to which a general provision might be made, which he termed the power "to fill up the details." The power of delegation is based upon necessity brought about by the increasing demands made upon legislative bodies by the growing complexity of human activities. 1 *Cooley, supra,* 231. For there are many things necessary to wise and useful legislation which cannot be known to the legislature and, therefore, must be determined outside the legislative hall. *Locke's Appeal,* 72 *Pa.* 491, 13 *Am. Rep.* 716.

The legislature also may provide for the punishment of violations of administrative rules as public offenses, and such rules are not raised to a legislative character thereby. *United States v. Grimaud,* 220 *U. S.* 506, 31 *S. Ct.* 480, 55 *L. Ed.* 563.

It is conceded that it is difficult to define the line which separates the legislative power to make laws from administrative authority to make regulations. *United States v. Grimaud, supra; Wayman v. Southard, supra; St. Charles State Bank v. Winfield,* 36 *S. D.* 493, 155 *N. W.* 776; nor can the multitude of decisions be harmonized, as the almost infinite variety of detail and circumstance and of the laws intended to meet them have led to an almost equal variety of judicial decisions. *State v. Public Serv. Commission,* 94 *Wash.* 274, 162 *P.* 523. The question is one which has to be answered in each individual case according to the judgment of the Court. 2 *Willoughby, Const., par.* 777. The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to

what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. *Cincinnati, W. & Z. Ry. Co. v. Clinton County Com'rs,* 1 *Ohio St.* 88.

██ But this power in a legislature to confer authority upon an administrative body to make rules and regulations is distinctly limited. It does not exist for any and every purpose. *Williamson v. U. S.,* 207 *U. S.* 462, 28 *S. Ct.* 163, 52 *L. Ed.* 278. The authority must be within fixed and valid limits. 6 *R. C. L.* 178; *State v. A. C. L. Ry. Co.,* 56 *Fla.* 617, 47 *So.* 969, 32 *L. R. A. (N. S.)* 639; and the authority of the administrative body, acting under such grant of power, is limited to the making of reasonable rules and regulations within the circumference of the power granted. As stated in 12 *C. J.* 845, the power conferred to make regulations for carrying a statute into effect must be exercised within the power delegated, that is to say, must be confined to details for regulating the mode of proceeding to carry into effect the law as it has been enacted and it cannot be extended to amending or adding to the requirements of the statute itself. See *Morrill v. Jones,* 106 *U. S.* 466, 1 *S. Ct.* 423, 27 *L. Ed.* 267; *St. Charles State Bank v. Wingfield, supra.* Implied authority in an executive officer to repeal, extend or modify a law may not lawfully be inferred from authority to enforce it. *United States v. 11,150 Pounds of Butter (C. C. A.),* 195 *F.* 657; nor may the power vested in the administrative body be extended to the making of rules subversive of the statute; *St. Louis, etc., Packing Co. v. Houston (C. C. A.),* 215 *F.* 553. As stated in *United States v. Grimaud, supra,* a case strongly relied upon by the State, the administrative rule must not go outside of the circle of that which the act affirmatively requires to be done, or treats as unlawful, if done.

█ Not questioning, therefore, the right of the legislature to attach a criminal liability to the violation of an

administrative order, it is, however, the duty of the Courts, where there is a prosecution for the violation of such order, to scrutinize the case with especial care, for it must clearly appear that the order is one which falls within the scope of the authority conferred. 2 *Willoughby, supra, page* 281.

The question raised by the motion to quash is not whether, under the Constitution of this State, the legislature had not the power to delegate to the commission the authority to make reasonable rules and regulations relating to the payment and collection of alcoholic liquor taxes, and to make violations of such regulations punishable as misdemeanors, but whether the commission, in adopting *Rule* 42, has acted within the scope of the power granted. The rule does not appear to be aimed directly at the payment or collection of taxes. It contains no administrative detail with respect to the determination of taxes, or when or where they are to be paid, what books are to be kept and in what manner, what returns are to be made and the form thereof, or the duties of the several officers in regard to the collection of taxes. The first paragraph of the rule, and the one which is of immediate concern, makes it unlawful to keep in possession alcoholic liquors in any container of a capacity of more than one quart unless stamps evidencing the payment of the required taxes have been firmly affixed to the container. The second paragraph prohibits the transference of alcoholic liquor from the original container to any other container, and further prohibits the refilling of the original container. The third paragraph purports to declare a rule of evidence amounting to a presumption of guilt and commands the seizure of the liquor.

Considering the rule as a whole, or in its several parts, it is impossible to view it as a reasonable administrative regulation within the scope of the power to make rules for the payment and collection of liquor taxes, or indeed to regard it other than as having legislative character.

With some exceptions, the right of a person of full age to purchase alcoholic liquors in any quantity is not denied by the statute. Without a license, one may purchase alcoholic liquor in quantity not exceeding one quart as frequently as the desire inclines and the means permit. Under license, a "stock of liquor" may be purchased for one's own personal use. It is true that no one may purchase liquors either from the commission or from any manufacturer or importer without paying the statutory taxes, but the act in question was not designed to limit the possession of liquors to designated quantities, as was the legislation in many jurisdictions prior to the repeal of the Eighteenth Amendment. The liquor held in containers denounced by the rule is not to be held until it shall have been determined whether the taxes have been paid, or until the tax shall have been paid; on the contrary, it is to be seized, and the statute requires the commission to hold seized liquors "until the Court has disposed of them by a judgment," and by *Section* 60, "Whenever any 'alcoholic liquor' is seized under this Act, it must be declared by the Court to be confiscated, upon proof of any contravention of the law, save in cases otherwise provided for." It would seem clear, therefore, that the rule cannot be regarded as one directly to enforce the payment or collection of taxes.

With respect to the original containers of liquors the act is not silent. By *Section* 32, alcoholic liquor in bottles procured by the holder of a license to resell to travelers must be kept in the original bottles, and as long as any such bottle bears the mark or label which it bore when delivered, it is forbidden to put therein any other alcoholic liquor. Furthermore, no holder of a license, nor anyone on his behalf, may refill such bottle either wholly or in part, with intent to supply alcoholic liquor to any traveller. These statutory provisions apply to the holders of license to sell to the public, and the statute goes no farther. It is reasonable to suppose that had the legislature thought it

necessary to apply restrictions of like nature to the individual, it would have so provided.

Seizures of liquor are specifically provided for, (a) where it is peddled, (b) where it is being transported in illegal quantities without license to transport, or without a way-bill, (c) where it is shipped into territory where a prohibitory law is in force, (d) where sold in a disorderly house, (e) where kept, transported or sold in contravention of the act, and, as has been said, all seized liquors must be ordered confiscated by the Court upon proof of violation of the law. To this list of causes for seizure, the rule attempts to make an addition, the mere having liquor in a container of a capacity of more than one quart without having a stamp evidencing the payment of the tax firmly fixed thereto, an idea apparently suggested by *Section* 201, *Title* 2, *of the Federal Liquor Taxing Act of* 1934, (26 *USCA*, § 267) a provision considered by the Congress to be of a sufficient importance to be included in the statute.

The rule palpably is aimed at a situation which, in the opinion of the commission, is not covered adequately by the statute. It was designed to discourage and prevent as far as possible the illicit purchase and sale of alcoholic liquor. To accomplish this end, the commission has added to and extended the statute. It has sought, under the guise of facilitating the collection of taxes, to transform acts, of themselves innocent, into criminal offenses. Keeping alcoholic liquor in a container having a capacity of more than one quart is not contrary to any provision of the statute nor is it an offense against morals. One may have a barrel of whiskey in his cellar which he possesses legally in all respects. He may, for all proper purpose, desire to keep part of it in more convenient receptacles, for instance, a decanter or other container, and this he may not do under the rule, if the container is of more than one quart capacity, unless he affixes to such container, and to each of them, stamps evidencing the payment of the taxes. Nor may

one, for his own convenience, for instance in travelling, or as an act of neighborly kindness, or from any other necessity, transfer liquor from the original container into any other container. It is urged that these provisions are directed against the wrongdoer. That may be true, but the rights of the law abiding citizen are not to be unnecessarily ignored. If the paramount necessity exists to denounce acts done every day by innocent citizens as criminal offenses, that necessity should be expressly declared by the legislature, and not by a rule adopted and promulgated under a power given to make administrative rules for the collection of taxes.

The authorities cited and relied upon by the State, *United States v. Grimaud, supra; McKinley v. U. S.,* 249 *U. S.* 397, 39 *S. Ct.* 324, 63 *L. Ed.* 668; *Rosen v. U. S.,* 245 *U. S.* 467, 38 *S. Ct.* 148, 62 *L. Ed.* 406; *United States v. Sacks,* 257 *U. S.* 37, 42 *S. Ct.* 38, 66 *L. Ed.* 118; *Selzman v. U. S.,* 268 *U. S.* 466, 45 *S. Ct.* 574, 69 *L. Ed.* 1054; *J. W. Hampton, Jr., & Co. v. U. S.,* 276 *U. S.* 394, 48 *S. Ct.* 348, 72 *L. Ed.* 624, are not, we think, opposed to these views. In each of these cases, except the last one cited and that rests upon a different basis, the authority to make regulations was clear and precise, the act covered by the regulation was a wrongful act, the regulation was reasonable and well within the scope of the legislative contemplation. In the *Grimaud Case* the regulation prohibited the grazing of sheep on certain forest reserves without a permit from the Secretary of Agriculture; in the *McKinley Case* the regulation denounced the keeping of houses of ill fame within a certain distance of military camps; in the *Rosen Case,* the regulation declared private letter boxes to be duly authorized depositories for mail matter, and a conviction for conspiracy to buy and receive checks and letters stolen from such depositories was upheld; in the *Sacks Case,* the indictment charged the defendant with altering a war savings certificate by tearing therefrom stamps, and

for having in possession with intent to sell, an altered obligation, to-wit, a portion of a war savings certificate. A regulation of the Treasury Department provided that a certificate was not a valid obligation unless a stamp was affixed; that only 20 stamps of the series might be affixed, and that no one person could at any one time hold certificates of an aggregate amount exceeding $1,000. The Court held the regulations to be administrative details; and that the action of the defendant constituted an alteration of the certificate and stamps with intent to use the same without the remainder of the certificate signed by the purchaser, and thus to defraud the government. There was no discussion of the question of delegation of power and no cases are cited; in the Selzman Case the regulation of the Commissioner of Internal Revenue with respect to the manufacture and distribution of denatured alcohol required certain packages to be marked "completely denatured alcohol," "Poison," and a statement of the danger from its use, a regulation reasonable and necessary in the interest of public health; in the *Hampton Case* a tariff act (*Tariff Act* 1922, *Tit.* 3, § 315, 19 *USCA,* §§ 154, 156) authorizing the equalization by the President of differences in costs of production here and in competing foreign countries by regulating custom duties was held not to be a delegation of legislative power, but the power to determine the existence of a fact.

The authorities cited by the defendant, *People v. Sholem,* 294 *Ill.* 204, 128 *N. E.* 377; *Kenyon v. Moore,* 287 *Ill.* 233, 122 *N. E.* 548; *City of Chicago v. Matthies,* 320 *Ill.* 352, 151 *N. E.* 248; *People v. J. O. Beekman & Co.,* 347 *Ill.* 92, 179 *N. E.* 435; *People v. Federal Surety Co.,* 336 *Ill.* 472, 168 *N. E.* 401; *Schireson v. Walsh,* 354 *Ill.* 40, 187 *N. E.* 921; *People v. Yonker,* 351 *Ill.* 139, 184 *N. E.* 228, to which may be added *Dowling v. Lancashire Ins. Co.,* 92 *Wis.* 63, 65 *N. W.* 738, 31 *L. R. A.* 112, are not of particular assistance by reason of their respective factual bases.

The Supreme Court of Iowa, in *Goodlove v. Logan,* 251 *N. W.* 39, 43, well expresses the objections to broad delegations of power to administrative boards. There the Highway Commission was granted power to establish rules and regulations relative to the use of the primary roads of the state, and in particular, relating to the stopping of vehicles on the paved portion of the roadway. Under this power, the commission adopted a rule prohibiting the stopping of a vehicle on a travelled portion of any primary road except when such vehicle was disabled and unable to proceed without emergency repairs or change of tires. In an action to recover damages for the death of Goodlove, a plea was interposed that the decedent was negligent with respect to his compliance with the rule in question. The Court held the grant of power unconstitutional as a grant of legislative power and said,

"If the Legislature can delegate to the highway commission the right to do these things, then, of course, the Legislature can delegate the same power to the board of control, to the insurance commissioner, superintendent of banking, and all other administrative departments of the state may be likewise empowered to enact rules and regulations to be given the force of statutes, which said commission might in their judgment determine to be for the general protection of the public. Once such bureaucracy has fastened itself into the life of legislative power, little else need be done by the Legislature than to meet and create boards. * * * If the Legislature in its wise judgment desires to pass such a statute, it, of course, has the right and authority to do so, for the Legislature is composed of the representatives of the people; it is chosen by the people for the purpose of making the laws of this state. The Legislature cannot transfer the power of making laws to any one else, or place the right to make laws anywhere but where the people have placed it. * * * If the right were given to the highway commission to make the laws governing the highways of this state, how is the individual using the highways to know what rules and regulations the highway commission passes? The highway commission meets at various and different times. It might pass some rule of regulation today and revoke it next week. There is no way that the people throughout this state could know just what were the rules and regulations that the highway commission adopted. About the only way that one could be certain as to what the rules and regulations were—if the highway commission had the right to pass them—would be to telephone to the highway commission every time one started on a journey, and, if that journey

were to be a long one, a wise and cautious individual would put in a telephone call before starting on the return journey."

Under the Act in question, publication of regulations is simply a provision for public inspection at the office of the commission, and what was said in the Iowa case is applicable here.

The rule in question is legislative in character, not administrative. Even if considered administrative, it is unreasonable, and "outside the circle" of that which the act treats as unlawful, if done. It adds to and amends the Act, and accordingly, must be held to be void and the indictment founded thereon is ordered to be quashed.