**YOUNG v. JULIAN.**

**· PENNSYLVANIA R. CO. v. JULIAN.**
**O'NEILL v. JULIAN.**

Civ. A. Nos. 1219, 1220, 1225.

United States District Court
D. Delaware.
Feb. 6, 1951.

See also, D.C., 10 F.R.D. 452.

was operating a tractor which was pulling a low-bed trailer; loaded on the trailer was a caterpillar type tractor to which was attached a Garwood dirt scoop of 15 cubic yards capacity. This combination of vehicles was travelling westerly on a public road intending to cross the railroad track at the Harmony Crossing. When the combination of vehicles had come to the crossing, the blinker warning lights were not flashing and the combination of vehicles started across the tracks. When partly over, the lower part of the scoop caught on the railroad and could not be disentangled, and the train then approaching, the accident happened, causing the damage to the train alleged in this complaint and in two companion cases brought by two employees of the plaintiff to recover for personal injuries sustained in the accident.

William S. Potter and James L. Latchum (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiffs.

John Van Brunt, Jr., and David Snellenberg, II (of Killoran & Van Brunt), of Wilmington, Del., for defendant.

RODNEY, District Judge.

This case involves motions for summary judgment made by both parties, plaintiff and defendant, and motions of the defendant to dismiss certain paragraphs of the complaint. The case involves an accident happening at a railroad grade crossing called the Harmony Crossing in New Castle County, Delaware, on the early afternoon of June 28, 1948. On that afternoon the plaintiff was operating a passenger train in a southerly direction on Track No. 3 and approaching the crossing. At the same time and place the defendant, by his agent,

While the exact length and weight of the combination of the vehicles operated by the defendant does not appear, yet it is agreed that both the length and weight of the combination of vehicles were in excess of the maximum length and weight prescribed by Sections 5653 and 5655, Revised Code of Delaware, 1935, and the operation was therefore illegal, without the special hauling permit provided for by Section 5657, Revised Code of Delaware, 1935, as set out in the footnote.[1]

It is admitted that the defendant had applied for and obtained from the State Highway Department the special hauling permit provided for in Section 5657. It is also admitted that the defendant did not comply with the "rules and regulations" printed on the permit. On the permit was printed a series of rules and regulations including, inter alia, the following:

1. "5657. Sec. 119. Permits for Excessive Size and Weight:—The State Highway Department, and local authorities in their respective jurisdiction may, in their discretion, upon application in writing and good cause being shown therefor, issue a special permit in writing authorizing the applicant to operate or move a vehicle of a size or weight exceeding the maximum specified in this Chapter, upon any highway under the jurisdiction of and for the maintenance of which the body granting the permit is responsible. Every such permit shall be issued for a single trip and may designate the route to be traversed and contain any other restrictions or conditions deemed necessary by the body granting such permit. Every such permit shall be carried in the vehicle to which it refers and shall be open to inspection by any peace officer and it shall be a misdemeanor for any person to violate any of the terms or conditions of such special permit, and shall be punished as provided in Section 142 of this Chapter."

"This permit does not give the holder the right to move over * * * railways, except as hereinafter provided. * * *

"The permittee shall not cross or attempt to cross the tracks of any railroad or railway company, at grade, until after due and sufficient notice of such proposed crossing shall have been given to the track supervisor or or other authorized agent of the railroad or railway company, and proper arrangements made for such crossing."

As stated, it is agreed that the defendant applied for and obtained the special hauling permit, but it is conceded that the defendant gave no notice to the track supervisor of the defendant or to any other agent, as prescribed by the rules and regulations, of its intention to cross any railroad track.

The complaint sets out four allegations of negligence on the part of the defendant:

7(a) That the defendant attempted to cross the tracks without giving the notice and making arrangements for the crossing as prescribed in the Special Hauling Permit;

7(b) That the defendant, by his agent, drove upon the tracks without using due care and caution;

7(c) That the defendant and his agent knew that the tracks were in continuous use by trains and that it was dangerous to attempt to move heavy equipment over the tracks without first notifying the railroad company;

7(d) That the defendant and his agent violated Section 5622, Rev.Code of Del. 1935, as amended [which concerns the operation of motor vehicles where traffic lights are in operation].

The plaintiff urges that it is conceded in the case that if the required notice of the intended crossing had been given by the defendant, proper steps would have been taken by the agent of the plaintiff to insure a safe crossing, and that no accident would have occurred. From this the plaintiff reasons that the failure to give the notice constituted negligence per se and the proximate cause of the accident, and therefore a summary judgment should be given in its favor.

The defendant, as I understand the contentions, moves for a summary judgment as an independent remedy. He also moves to dismiss each of the four allegations of negligence in the complaint as above set out, and reasons that when these are dismissed, nothing remains and the defendant is entitled to summary judgment as a result of these dismissals.

I prefer to adopt a purely arbitrary order of consideration of the various problems whereby the lesser questions will be first considered, leaving the basic problems for more detailed consideration. I shall consider the questions in the following order:

1. Motions of defendant for summary judgment as an independent remedy.

2. Motion of defendant to dismiss paragraph 7(b) of the complaint.

3. Motion of defendant to dismiss paragraph 7(c) of the complaint.

4. Motion of defendant to dismiss paragraph 7(d) of the complaint.

5. Motion of the plaintiff for summary judgment based upon paragraph 7(a) of the complaint, involving failure of the defendant to give notice of the intended crossing as required by the special hauling permit, and the motion of the defendant to dismiss paragraph 7(a) of the complaint. These motions involve many of the same problems, and in turn raise the following questions:

(a) Constitutionality of the statute, Sec. 5657, delegating to the State Highway Department the right to issue the special hauling permit;

(b) Whether the conditions attached to the special hauling permit were within the delegated power;

(c) The effect of a violation of the special hauling permit as constituting negligence.

 1. I shall first briefly consider the motion for summary judgment made by the defendant. It is based upon the contributory negligence of the plaintiff, both as to the maintenance of the crossing in question under a statute of the State of Delaware, and to the manner of operation

of its train. I shall not labor this point. A summary judgment is only justified when the pleadings, depositions, admissions and affidavits, if any, show there is no genuine issue of material fact. Such is not the situation here, and the actions of the plaintiff as a basis of contributory negligence constitute genuine issues of material fact. Summary judgment for the defendant as an independent remedy must be denied.

■ 2. The defendant's motion to dismiss paragraph 7(b) of the complaint must be denied. That paragraph simply alleged that the defendant drove upon the crossing without using due care and caution. That fact is a material fact as to which there is and must be a genuine issue.

■ 3. The motion of the defendant to dismiss paragraph 7(c) of the complaint must be granted. That paragraph simply asserts a common law duty of the defendant as a user of heavy equipment, and, irrespective of any statute or regulation, to notify a railroad company in advance of an intended passage over a public railroad crossing. No authority for the existence of any such common law duty has been suggested, and in its absence I think such paragraph alleges no act of negligence.

■ 4. Defendant's motion to dismiss paragraph 7(d) of the complaint must be denied. That paragraph concerns the violation of a statute concerning the operation of motor vehicles at a place where traffic lights are in operation and give notice of the approach of a train. The time of the initial operation of the traffic lights in the present case with reference to the position of the defendant's vehicle may or may not become material in the ultimate trial of the facts.

■ 5(a). It is objected that the statute, Sec. 5657, as set out in the footnote, embodies an unconstitutional delegation of legislative power. It is not objected that the Legislature lacked the power to prescribe maximum size and weights of vehicles using the public highways, or of allowing by permit the use of such highways on occasion by vehicles exceeding such maximums. It is also not objected that the issuance of this permit may be delegated to an administrative body. It is objected, however, that the statute stated that the permit to be issued by the State Highway Department, in addition to limiting the permit for a single trip and the designation of the route to be traversed, may "contain any other restrictions or conditions deemed necessary by the body granting such permit." It is universally held that a constitution should never be regarded as denying to a legislative body the necessary resources of flexibility and practicality which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits, and the determination of facts to which the policy as declared by the Legislature is to apply. A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. To the same effect are the Delaware authorities. State v. Retowski, 6 W.W.Harr. 330, 36 Del. 330, 175 A. 325; Hoff v. State, 9 W.W.Harr. 134, 39 Del. 134, 197 A. 75. This principle has been specifically applied to statutes granting administrative bodies the right to issue special hauling permits, whereby oversize or overweight vehicles could, under certain circumstances, make use of public highways. Sproles v. Binford, 286 U.S. 374, 397, 52 S.Ct. 581, 76 L.Ed. 1167.

Contract Cartage Co. v. Morris, D.C., 59 F.2d 437, 446, involved a provision not dissimilar from the one herein involved. An Illinois statute gave to highway officials the right to issue special permits for the operation of a combination of vehicles exceeding the maximum weights and dimensions "when in their opinion an emergency exists warranting the granting of the permit. The permit shall be granted only for limited periods and for trips over designated highways and streets, at specified times and subject to such other conditions as such highway or state officials may prescribe * * *." Ill.Rev.Stat.1931, c. 121, § 200. A three-judge court held the statute constitutional and said, "No law can cover all possible situations. A large measure of discretion and judgment must be left to those charged with executive and administrative duties.

The statute indicates a general policy of the government and has left to the administrative officers within narrow limits, to administer the details so as to make the law practically effective."

Objections here raised were also considered as to analogous legislative provisions in State v. Wetzel, 208 Wis. 603, 243 N.W. 768, 772, 86 A.L.R. 274. There it was held that the "authority * * * vested in the highway commission and in the officers is administrative rather than legislative, and that discretion rather than arbitrary power is vested. * * * It is equally plain that the discretion to issue permits is to be exercised with regard to the subject of public safety upon the highways. It is essential to the practical administration of such a law that there be some such discretion vested in the highway authorities. It is impossible for the Legislature to anticipate all of the very many details and contingencies that may arise in the handling of such a complex problem as regulating traffic upon the public highways."

In Zackary v. Morris, 78 Fla. 316, 82 So. 830, it was held that statutory provisions strongly similar to those now considered did not unlawfully delegate legislative powers.

In Ashland Transfer Co. v. State Tax Commission, 247 Ky. 144, 56 S.W.2d 691, 87 A.L.R. 534, the questions here raised were largely considered, and quite similar legislative language was held not to be an unlawful delegation of legislative power.

▆▆▆ I am of the opinion that the delegation of power to the Highway Department to issue special hauling permits for occasional use of oversize vehicles or vehicles of beyond the maximum weight is not an unlawful delegation of legislative power. The inclusion in the right to issue such permits of the further right to insert "restrictions or conditions deemed necessary by the body granting such permits" does

not, I think, make a lawful delegation of power into an unlawful one.

In Mutual Film Corp. v. Industrial Commission of Ohio, 236 U.S. 230, 35 S.Ct. 387, 392, 59 L.Ed. 552, it is said, "While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution. * * * The exact specification of the instances of their application would be as impossible as the attempt would be futile."

▆▆▆ Certain of the regulations governing the issuance of the permit must change as the exigencies of traffic conditions change, and a biennial session of the legislature could not keep pace with new conditions. It must be assumed that the rules and regulations, if any, to be made in connection with a special hauling permit must be those germane and appropriate regulations governing that special matter alone. Objection that the regulation as made is not germane to the delegated power would affect the validity of the regulation, rather than the delegation of power to issue the special hauling permit itself.

The inclusion in the legislative grant to an administrative body of the right to issue special hauling permits, of words allowing the inclusion of "restrictions or conditions deemed necessary by the body granting such permit" is not a novel or an unusual provision. While in no sense determinative of the question, yet even a casual examination discloses similar provisions set out in the footnote.[2]

2. Wis.Stat. § 85.53. " * * * Every such permit shall designate the route to be traversed and may contain any other condition or restriction deemed necessary

by the officer granting the permit. * * * "

Vehicle and Traffic Law McKinney's Consolidated Laws of New York, c. 71,

5(b) Is the condition attached to the special hauling permit a permissible condition within the delegated power?

■ The answer to this question involves the consideration of the general scope of the authority and jurisdiction of the Delaware State Highway Department, and of the purposes sought to be attained by the condition attached to the special hauling permit. The defendant argues that even if it be conceded that the Legislature has validly delegated to the State Highway Department the right to attach some conditions and regulations to the special hauling permit, such conditions and regulations must be confined to those which are necessary to protect the highways from damage, such as by excessive loads. It is impossible for me to agree with this statement in its fullest extent. The statute allowing special hauling permits for vehicles exceeding certain "maximums" applies to those vehicles or combination of vehicles exceeding the maximum length as well as to those exceeding the maximum weight. It is difficult to imagine that rules affecting a vehicle greatly exceeding the maximum length but which are far below the maximum weight must be based on the view of protecting the highways from damage.

■ The determination of the validity of a delegation of power to a state highway department to make rules and regulations must in some degree consider the nature of the state highway department and the extent of its responsibilities. In many states the highway commission or department is charged with the laying out and maintenance of the public highways with a very limited authority as to traffic conditions, but where the enforcement of traffic regulations and the protection of the public by state or highway police is placed within the authority of an entirely different body. Such seems to have been the situation in Cabell v. City of Cottage Grove, 170 Or. 256, 130 P.2d 1013, 144 A.L.R. 286, cited by the defendant. In Delaware the State Highway Department is not only charged with the laying out and maintenance of the highway system, but specially charged with the control of the highways for the purpose of regulating traffic and the operation of vehicles thereon. The appointment and maintenance of the state or highway police is a function specifically delegated to the State Highway Department by Section 5747 et seq., and these officers are specially charged "to enforce all laws relating to the safety of persons and property." The State Highway Department, by Sec. 5740, is given the power to erect and maintain at grade crossings of a railroad or railway such signs, signals, lights or other devices as will, in the opinion of the Department, furnish more adequate protection to the travelling public. Finally, Sec. 5758, as amended, 45 Del.Laws, c. 270, provides, "The department [State Highway Department] shall have jurisdiction and control of all State highways of the State * * * for the purpose of regulating traffic and the use and operation of all vehicles thereover; and may adopt any and all reasonable rules and regulations respecting the use of such highways and the operation of all vehicles upon the same; * *."

■ The power of an administrative officer or board to administer a statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated—but is the power to adopt regulations to carry into effect the legislative will as expressed in the statute. [3]

Vol. 62–A, Sec. 14, subd. 19, states: "* * * the superintendent of public works may issue a permit to operate or move a vehicle * * * the weights or the dimensions of which exceed the limitations provided for in this section * * *. Every such permit may designate the route to be traversed and contain any other restrictions or conditions deemed necessary by the superintendent. * * *"

Purdon's Pennsylvania Statutes. Title 75, § 455, contains a provision for a special permit: "* * * Every such permit shall be issued for a single trip, and shall designate the route to be traversed, subject to such rules, regulations, restrictions, or conditions, as shall be deemed necessary by the authority granting such permit: * * *."

3. Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528.

These regulations must, of course, be reasonable and within the intendment and scope of the statute itself. As applied to the present case, the legislative will is clear that vehicles exceeding the maximum weights and lengths shall not use the public highways except when a special permit shall have been issued for that use. It seems equally clear that an administrative body charged with the duty of making rules and regulations governing the operation of all vehicles on the highways, and especially charged with the duty of exercising a discretionary power to issue special hauling permits for vehicles exceeding legal maximums, must be held to have power to make regulations calculated to protect lives and property upon the public highways from the effect of such special hauling permit. I am of the opinion that such precautions may be required in those cases where the operation of the motor vehicles would be illegal without such special hauling permit, and that consequently the condition or regulation here in question was within the scope of authority of the Highway Commission and was not invalid as being arbitrary, unreasonable or as going beyond the delegated authority of the Commission. Clearly the regulation was reasonably calculated to protect the travelling public, including the operator of the oversize or overweight vehicle, from a special risk which it might be anticipated would result from the passage of such a vehicle over a place which even under normal conditions is one of particular danger.

5(c) The effect of a violation of a condition of the special hauling permit as constituting negligence must be briefly considered.

This is a diversity case and, as such, requires the application of law as announced by the Delaware Courts. It seems entirely clear that Delaware Courts have uniformly held "that a violation of a [statute or] city ordinance amounts to negligence in law, whether any positive or active negligence be proved or not. It is what is commonly known in law as negligence per se."[4] Delaware Courts have as consistently held that, notwithstanding the violation of a statute or ordinance, there must be, to authorize recovery, "a causal relation between the violation of the law and the injury complained of."[5]

No Delaware case has been found bearing upon the effect of a violation of an administrative order or as to whether such violation constitutes negligence per se or is merely admissible to show the existence of negligence.[6] For the purposes of this case it seems unnecessary to determine this question. If a violation of a statute or ordinance, even though establishing negligence per se, must be accompanied by proof of a causal connection establishing it as a proximate cause of an accident, so, in any event, must a violation of an administrative order or condition of a special hauling permit. On the other hand, if a violation of an administrative order does not establish negligence per se, yet it would seem that such violation must be admissible as having some tendency to show the existence of negligence. The causal connection and proximate cause would still remain to be established.

Causal connection and proximate cause depend upon many factors and, in this case, should not be determined upon a motion for summary judgment.

Summarizing, I am of the opinion that the motions for summary judgment made by the plaintiff and by the defendant must both be denied; that defendant's motions to dismiss as directed to paragraphs 7(a), 7(b), and 7(d) of the complaint are denied; that defendant's motion to dismiss as directed to paragraph 7(c) of the complaint is granted.

An appropriate order may be submitted.

4. Campbell v. Walker, 2 Boyce 41, 25 Del. 41, 78 A. 601, 604.

5. Lindsay v. Cecchi, 3 Boyce 133, 26 Del. 133, 80 A. 523, 524, 35 L.R.A.,N.S., 699.

6. 65 C.J.S., Negligence, § 19, p. 427.