## Lovell, et al. v. Town of Mount Vernon, et al.

(Decided June 15, 1926.)

### Appeal from Rockcastle Circuit Court.

1.  Municipal Corporations—Ordinance Establishing Fire Limit in Different Territory Held Not to Repeal Previous Ordinance, but Merely to Add New Territory.—Ordinance establishing fire limit, covering entirely different territory from that covered in former ordinance, held not inconsistent with and not to repeal first ordinance, but merely to increase fire limits by adding new territory.

2.  Words and Phrases—"Repair Building."—To "repair building" is to replace it as it was, or restore it after injury or dilapidation, but not to enlarge or elevate it.

3.  Municipal Corporations—Owner Replacing Building with New Structure Differing in Size and Appearance and Opening into Adjoining Building Held Engaged in Erecting New Building.— Owner replacing building with new structure differing substantially in size and appearance held engaged in erecting new building contrary to fire limit ordinance, though only opening was into adjoining building.

4.  Municipal Corporations.—Ordinance requiring building permit and prescribing no standard to be complied with is void.

5.  Municipal Corporations—Fire Limit Ordinance, Forbidding Permit for Wooden Building Within 110 Feet of Pavement, Held Not Invalid as Conferring Arbitrary Power.—Fire limit ordinance, providing no permit should be granted for wooden building nearer than 110 feet from outer edge of pavement, held not invalid as conferring arbitrary power.

B. J. BETHURUM for appellants.

C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by the town of Mount Vernon and the owners of the adjoining property against A. G. Lovell and R. H. Miller to enjoin the erection of a wooden building within the fire limits the relief prayed for was granted and the defendants appeal.

There is no merit in the contention that the fire limit ordinance of 1909 was repealed by the ordinance of 1916. The language of the ordinance of 1909 is as follows:

"A fire limit is hereby established in the town of Mount Vernon as follows: Beginning at Main street railroad crossing and continuing eastward on Main street including all space, lots, ground, streets, alleys

and buildings on First street (that street lying on east side of jail and in east side of dwelling now owned by H. H. Beatty). . . . ''

The language of the ordinance of 1916 is as follows:

''That a fire limit be hereby established in the town of Mount Vernon, Ky., as follows:

''Beginning at the corner of First and Main streets crossing, and continuing southward on First street, including all space, lots grounds, streets, alleys and buildings to Old Main street. . . . ''

There is no inconsistency between the two ordinances, and in order to hold that the first is repealed by the second we would have to take the position that the second was intended to be the whole law on the subject. As a matter of fact, however, the two ordinances relate to entirely different territory. It is therefore plain that the council did not intend to substitute a new zone for the old zone and leave the old zone entirely outside the fire limits. On the contrary, its purpose was merely to increase the fire limits by adding new territory to the existing zone.

But appellants insist that they were not erecting a building, but were merely engaged in repairing an existing building. On this question appellant R. H. Miller testified as follows:

''Q. State what you were doing until the time the restraining order was served on you. A. I was adding about fifteen by thirty feet to Dowell Bros.' store.

''Q. What is that store? A. It is a meat market.

''Q. That is now your place of business, what sort of business is it? A. It is a frame building, and has been standing there a great deal longer than I can remember.

''Q. Go ahead and tell what you were doing or attempting to do, and are now wanting to put up. A. There are two ends and one side with no doors, no flue, and after the three sides are incased, it is our intention to knock out the partition and enlarge Dowell Bros.' store.

''Q. The only method of entrance would be to enter through the door that you now enter Dowells' store? A. Yes, sir. . . .

"Q. Did you tear anything out of this place where you are putting up this room? A. I had moved out a pressing shop.

"Q. Describe that pressing shop. A. It was a kind of car affair on wheels, and some time—I can't say just when—a foundation was placed under it; it was about twenty-five feet in length and contained a flue; four separate and distinct walls—complete building in itself.

"Q. How long has that been taken away? A. Three or four days before I started this improvement."

Appellant A. G. Lovell testified as follows:

"Q. Explain to the court just what is being done in the way of construction. A. It is just an extension of the store room now occupied by Dowell Bros.

"Q. That wall that joins there, the entrance is to be from the store room? A. It is just simply an enlargement of the store room."

Neal Parrott, a carpenter, testified as follows:

"Q. Were you employed to do this work for the defendants on this building here in Mount Vernon that is complained of? A. Yes, sir.

"Q. Will you tell the court what plans and specifications there are of this addition as given to you by the defendants? A. It was to make that store room wider.

"Q. What store room? A. Dowell Bros.'

"Q. Go ahead and explain how you were to make that wider. A. We were to erect the walls and take out the partition, and throw it all into one room.

"Q. What is the effect of the improvements that you are employed to do? A. I do not know.

"Q. Does it make a room? A. It is to enlarge a room.

"Q. Is there to be any chimney or flue or fireplace in it? A. No, sir.

"Q. Any doors? A. No, sir.

"Q. How do you go into that part of it? A. Into Dowell's store.

"Q. There was no entrance to this new addition except through Dowell Bros.' store? A. No, sir.

"Q. What was the dimensions of this? A. Fourteen by eight wide and about thirty feet long.

"Q. Where is the width? A. On the front.

"Q. And the length runs back? A. Yes, sir.

"Q. Back toward what? A. Toward the back street. . . .

"Q. The building that you speak of up to this time is wood? A. Yes, sir.

"Q. The rafters, sleepers and everything wood? A. Yes, sir.

"Q. You were directed to put it up as soon as you could? A. No, sir. I was due at another place and was trying to get it in shape for the boys to finish it.

"Court: Q. Did you move the old building? A. No, sir, some other parties moved it.

"Q. I do not understand whether the old roof was moved. A. Only the old building was moved away; the roof was moved with it.

"Q. The roof of the old building was moved away? A. Yes, sir.

"Q. That was moved away about how long? A. Two or three days before we began.

"Q. After that building was moved away then you started that new building? A. Yes, sir.

"Q. Then this building that you were erecting was the new building? A. It is an addition to the store.

"Q. It is a new building? A. Yes, sir."

For appellees W. H. Fish testified that appellants were attempting to construct a frame building about 14 feet wide and possibly 20 feet long. He understood that it was an addition or improvement to the property that had already been built. O. D. Bryant deposed that the appellants were attempting to erect a building about 14 feet wide, 30 feet in length and about 15 feet high. Mr. Proctor testified as follows:

"Q. Do you know this building that is in controversy? A. Yes, sir.

"Q. Describe that to the court. A. It is a frame building.

"Q. State whether or not it is a new building? (Obj. made by attorney for deft.; obj. overruled, to which ruling of the court the deft. by attorney excepts.) A. Yes, sir, it is new.

"Q. Describe it as nearly as you can. A. It is just a frame building against the old building. The room must be 14 by 16 up and down the street, and runs back about 20 or 30 feet.

"Q. About how high? A. I guess about 12 feet.

"Q. Was there anything there where this building is attempted to be built? A. There was an old wagon house, built on a wagon.

"Q. How long has that house stood there where this building is located? A. Three years.

"Q. When was that building moved away from there? A. Just before they started that new building.

"Q. As soon as the old wagon was moved away they started this new building? A. Yes, soon after."

To repair a building is to replace it as it was, or to restore it after an injury or dilapidation, but not to enlarge it or elevate it by increasing its height or extending its sides. 4 R. C. L. 403. As we construe the evidence appellants owned a frame building. Adjoining this building was an old wagon box on wheels. The wheels were removed and a foundation built. That building was then removed from the lot and appellants were engaged in replacing that building with a new structure differing substantially in size and appearance. It is clear, therefore, that appellants were engaged in erecting a new building and not in repairing an old building. Nor can they justify on the ground that they were making insignificant alterations in their old frame building. The new structure was to be 14 feet wide, about 31 feet long and about 15 feet high. Such a structure is more than a mere alteration of an existing building. It is a substantial addition, and its erection is prohibited by the ordinance.

But the further point is made that the ordinance is unconstitutional and void because it invests the city council with arbitrary and unlimited power in the matter of granting or refusing building permits. It may be conceded that a city ordinance requiring a building permit

is void, when it prescribes no standard with which the citizen must comply, or by which the discretion of those invested with the power to grant or refuse the permit is to be controlled. City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Commonwealth, et al. v. House, 177 Ky. 829, 198 S. W. 218; Board of Trustees of Town of Bloomfield v. Bayne, 206 Ky. 68, 266 S. W. 885. The reason for the rule is that, if the ordinance does not fix the requirements, the question of compliance is a mere matter of opinion, varying with the personnel of those charged with the duty of issuing the permit, with the necessary result that the ordinance admits of the exercise, or the opportunity for the exercise, of arbitrary discrimination between citizens who comply with its provisions. After fixing the fire limits, and providing that within those limits no permit should be granted, and no building erected except as thereinafter specified, the ordinance concludes as follows:

"No permit shall be granted for the erection of a wooden building within said fire limits nearer than 110 feet from the outer edge of pavement of said street."

This language is plain and easily understood. If the proposed building is to be of wood and nearer than 110 feet from outer edge of the pavement of the street, no permit can be granted; but if the building be more than 110 feet from the outer edge of the pavement, then it is the duty of the council to grant the permit. In other words, the ordinance prescribes a standard with which the citizens must comply, and by which the discretion of the council is to be controlled. That being true, it does not confer arbitrary power or afford opportunity to discriminate between those similarly situated. It follows that the ordinance is not invalid.

As the ordinance is valid, and appellants were engaged in erecting a new wooden building within the fire limits, and nearer than 110 feet from the outer edge of the pavement of the street, it follows that the building was being erected in violation of the terms of the ordinance, and that the injunction was properly granted.

Judgment affirmed.