Rose ROSENBLUM, Edward Rowe and Harriet R. Wise, as Trustees under a Trust Indenture dated November 23, 1942, Plaintiffs-Appellees,

v.

NEISNER BROS., Inc., Defendant-Appellant.

No. 11530.

United States Court of Appeals Seventh Circuit.

Feb. 21, 1956.

Rehearing Denied April 4, 1956.

Frank G. Marshall, Chicago, Ill., Sherwin J. Stone, Chicago, Ill., of counsel, for appellant.

Samuel Morgan, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiffs, Rose Rosenblum, Edward Rowe and Harriet R. Wise, as trustees, on December 1, 1944, leased to the defendant, Neisner Bros., Inc., for a period of 23 years and five months a part of Lots 5 and 6 in Block 18 in the City of Waukegan, Illinois. On the land so leased there was an L-shaped store building known as 6–8 Genesee Street and 206 Washington Street, Waukegan, Illinois. This was a two story and loft type of building. The agreed rental was at the rate of $21,258.00 per year for the first ten years of the term and at the rate of $18,000.00 per year for the remainder of the term, said rental to be paid on a monthly basis. As additional rental the lessee agreed to pay all taxes, assessments and water rents assessed against the premises and to keep the premises insured against fire and other hazards. At the time of the execution of this lease the defendant was in possession of these premises under the terms of a former lease which was executed February 4, 1928.

The plaintiffs' complaint charged that in July, August and September of 1952 the defendant, without notice to or the consent of the plaintiffs, constructed a third floor addition on a portion of the building on the leased premises; that said addition did not conform to the original architectural design of the premises; and that plaintiffs, on learn-

ing of the addition, protested and objected to the defendant, but that defendant denied that it had violated the lease and insisted that it had the right to so change or alter the building under the language of the lease, which expressly provided that:

"Lessee shall have the right to make such alterations and changes in any part of the premises occupied by it as it finds necessary for its purposes, at its own expense, providing such alterations will not injure the building, and must be done in a first-class workmanlike manner. Lessee agrees to restore the premises to the same condition as when received, if Lessors so desire and give at least Three (3) months notice to [that] effect before the expiration of the term of this lease."

The complaint further charged that the addition to the building was of the cheapest possible construction and tended to depreciate the value of the premises; that in so constructing the addition to the building the defendants committed waste and breached the lease; that unless a decree was entered terminating the lease and directing the defendant forthwith to remove the addition, the plaintiffs would suffer irreparable damages; and that plaintiffs were entitled to monetary damages in the amount of $100,000.00 for breach of the lease and for injuries to the premises by the defendant.

Defendant's answer alleged that the construction of a third floor on part of the building was expressly permitted by the above quoted provision of the lease relating to the right of the lessee to make alterations and changes in the premises; and that, in the alternative, plaintiffs had waived any right to notice of any alterations and changes, including additions, by their prior conduct in not insisting on notice and in failing to complain of extensive alterations, changes and additions to the premises which the defendant had made in 1946 and 1947 and at various times thereafter.

In its answer the defendant also quoted a provision of the lease which states that, in case of a violation of the terms of the lease by the lessee for 90 days after receipt of written notice by the lessors of such violation, the lessors may then cancel the lease by giving the lessee 30 days written notice, by registered mail addressed to the home office of the lessee. Defendant's answer alleged that no notice of a violation of the lease was given by the lessors, and that this action by the plaintiffs was therefore premature.

The District Court found that the defendant, in 1952, "erected a 28' x 50' x 10' structural steel, face brick and concrete block, fire resistant unit, which occupied one-third of the roof of the premises fronting on Washington Street." The court found that the defendant constructed this unit for the purpose of creating additional storage space in the leased premises, and that this construction was without notice to or the consent of the plaintiffs. The trial court concluded that the above described construction was not an "alteration" or "change" permitted by the terms of the lease, but was an "addition" not authorized by the lease and amounted to adding another story to a part of the building.

The court further found that the construction work by the defendant in 1952 did not enhance the market value of the demised premises but depreciated it, "at least from an esthetic view." The court also found that the plaintiffs' claim for damages had not been supported, "no evidence having been offered to prove the amount of damages allegedly sustained."

In their brief in this court the plaintiffs state, page 14: "At the trial the plaintiffs offered no evidence of pecuniary damages and abandoned that portion of their prayer. They expressly limited the relief requested to a declaratory judgment and to a mandatory injunction." We find nothing in the record to indicate such a change of heart until after the trial below. There was no

such amendment by the plaintiffs of their complaint.

In the trial the plaintiffs offered the testimony of Elton Vick, a real estate broker and appraiser, in an attempt to show that the value of the building had been decreased by the construction of the storage space. Vick was asked if he had an opinion as to whether such construction appreciated the value of the building. He first answered, "No." But when the question was repeated he said: "Yes, I have my own opinion. * * * My opinion is that it detracts from the building as far as the *outward appearance* is concerned, and it adds nothing to the building in value." (Our emphasis.) In explaining the reasons for this opinion he described the appearance of the *inside* of the storage space. When asked whether in his opinion the storage space was constructed in a workmanlike manner, Vick said: "I will say that the construction work is sturdy, but it isn't finished off to be of any use other than what it is used for." In answer to a further question as to whether in his opinion the storage space "adds or detracts from the rental value of the building as a whole," Vick said: "It detracts from the building and the space, to me, is not large enough for a building of that size to add any particular value." He also said that the stair case and conveyor belt going up to the storage unit used a certain amount of space on the second floor. Mr. Vick did admit that the 1400 square feet of additional storage space was beneficial to Neisner Bros., and was built because the defendant needed more storage space. But he said he could "see no uses to the landlord" of that additional 1400 square feet of storage space and thought it was "a gamble" as to whether the landlord would be able to get more rent because of the additional space. Finally, in answer to a question as to whether the additional storage space had decreased the rental value or capital value of the property, he said, "I can't say that it has increased it

any"; and to a question as to whether it had decreased it any, he said, "Well, if I was appraising it, I think I would throw this additional in for nothing."

As we shall show, the opinion of this witness as to the question of whether the additional storage space increased the rental value of the property was diametrically opposed to the opinion of the plaintiffs. Vick's testimony on this point was also flatly contradicted by the defendant's expert witness, Mr. Olson, who testified without any equivocation or evasion that the added 1400 square feet of storage space increased both the rental value and the capital value of the property.

In the proposed findings of fact tendered by the plaintiffs below there was a suggested finding that: "The said addition was not constructed in a workmanlike manner and tended to depreciate rather than enhance the value of the premises * * *." Thus we see that the plaintiffs throughout the trial were insisting on their contention that the value of the building had been depreciated and that they were entitled to damages. The trial court failed to find, as contended by plaintiffs, that the addition "was not constructed in a workmanlike manner," and the court's failure to so find for the plaintiffs must be taken as a finding against them on their contention that even if the lease gave the defendant the right to so alter the premises, the construction was not done in a workmanlike manner and, therefore, violated the provision of the lease.

It is true that the trial court found that this construction work was paid for by the defendant and that the unit was built for storage purposes, with unplastered, exposed masonry walls, without water outlets or toilet facilities, and with only one small window at the rear for ventilation; but the court did not find that such construction was not perfectly satisfactory for storage space, the purpose for which the additional unit was built, and therefore space to which customers were not invited. Of

course, if the defendant, as it contends, was given the right by the lease to make such a change in the plaintiffs' property, no further consent from the plaintiffs was necessary. We think the defendant was given such a right.

■ This was a long term lease, given to the tenant which had occupied these premises under a former lease executed February 4, 1928. The second lease was not to expire until April 30, 1968, thus giving the defendant a continuous tenancy of approximately forty years. Under these circumstances it would seem that any ambiguity in the lease as to how the tenant might change the building to furnish better accommodations for its business must be interpreted in favor of the tenant. This would seem to be especially true where, as here, the lessors were protected against any change in the building which they might not like or approve, by the provision in the lease which required the tenant to restore the premises to the same condition as when received if the lessors should so desire and should give notice of that desire to the tenant at least three months prior to the expiration of the lease.

Shortly after learning of the 1952 alteration of their building the plaintiffs wrote a letter to the defendant protesting that the construction of additional space was not permitted by the lease unless the defendant was willing to pay additional rent. This letter showed very clearly that the plaintiffs' real concern was that the defendant, having increased the rental space and consequently the rental value of the leased property, should be compelled to pay additional rent to the plaintiffs for this additional space, even though the cost of the construction—in excess of $10,000.00—was borne entirely by the defendant. That the desire of the plaintiffs for more compensation for the additional space was their reason for bringing this action is also shown by the following stipulation made by plaintiffs' counsel in the trial. "We will stipulate that had additional compensation been paid to us we would not have filed this suit. There is no question about that."

We must assume from the statements in plaintiffs' letter and from the above statement by plaintiffs' attorney that the plaintiffs were convinced that the additional storage unit built by the defendant materially increased the rental value of the leased premises. It is difficult to understand how an alteration, change or addition to a commercial rental property such as the one here involved could increase the rental space and thereby increase the rental value without increasing the value of the property.

The fact that the plaintiffs did not actually believe, as they now contend, that the 1952 construction work had decreased the value of their property is shown by a statement made by their attorney in explanation of the materiality of certain evidence which he sought to introduce (record, page 61): "It is material in this sense, your Honor: The argument is going to be made that at the conclusion of the lease they can restore the premises to the former condition, if we so desire, and *we will definitely not so desire* \* \* \*." (Our emphasis.) The plaintiffs, of course, would want the premises restored to their former condition if they actually thought that the construction of the storage space detracted from the value of the building.

The plaintiffs' chief contention in this appeal is that the provision of the lease which authorized "alterations" and "changes" in the building by the tenant did not permit "additions" to the building such as the construction of the additional storage unit in 1952. We agree with the plaintiffs that if the lease did not authorize this construction work, such work constituted waste, and the fact that it enhanced the value of the plaintiffs' property does not constitute a defense. But we cannot agree that this work was not authorized by the lease. We think a fair construction of this lease requires us to hold that the

permission by the lessors to make such alterations and changes as the lessee found necessary for its purposes describes the 1952 construction work done by the defendant for the purpose of providing additional storage space.

In their argument on this point the plaintiffs describe an alteration in a building as "a substantial change therein varying or changing the form or nature of such building without destroying its identity." That definition clearly describes what was done here. Certainly the identity of this building was not destroyed. It remains a commercial, rental building, used for the same purpose after the alteration as before, and still identified as 6–8 Genesee Street and 206 Washington Street in the City of Waukegan, Illinois.

In Fehr Construction Co. v. Postl System, 288 Ill. 634, 642, 124 N.E. 315, 318, the court said: "Improvements which add to the heighth or depth of a building, or that change, increase, and repair the interior accommodations thereof, are repairs or alterations * * *." The plaintiffs, however, do not agree that the construction here in question constituted an "alteration" in the leased premises, but insist that it was an "addition" to the building and therefore was not authorized by the lease. Plaintiffs say that in defining the word "addition" the courts have adopted the following definition of that word from Webster's New International Dictionary: "A part added to a building, either by being built so as to form one architectural whole with it, or by being joined with it in some way, as a passage, and used so that one is a necessary adjunct or appurtenance of the other, so that both constitute in use and purpose one and the same building." However, in each of the following cases which were cited by the plaintiffs to support this contention the addition being discussed was not a construction such as the one here involved but was a lateral extension or construction adjacent to or adjoining the principal building: Cole v. City of Battle Creek,

298 Mich. 98, 298 N.W. 466; Lovell v. Town of Mount Vernon, 215 Ky. 143, 284 S.W. 1025; Mack v. Eyssell, 332 Mo. 671, 59 S.W.2d 1049.

In Cole v. City of Battle Creek, the court said, 298 N.W. at page 468: "As used in this ordinance, the word 'alteration' means a change in that which already exists, for it is impossible to alter that which does not exist. If plaintiff merely wanted to install a new front on an existing building, such as was done in Paye v. City of Grosse Pointe, 279 Mich. 254, 271 N.W. 826, that might be a permissible alteration. But the erection of two new additions is not a structural alteration of an existing building." But in that case the court was considering the lateral construction on the ground of two new wings which the owner was about to build and attach to his existing greenhouse. In Lovell v. Town of Mount Vernon, supra, the court was discussing a situation where an old shed adjacent to a main building was being removed and replaced by a new structure. In Mack v. Eyssell, supra, the lease gave the landlord the right to tear down, rebuild, alter, add to, or otherwise change the existing building by erecting an addition thereto on the adjacent lot or to construct additional stories to the existing building or both. The lease also provided that it should extend to and cover such extensions and additions to the building and further provided for such additional rents as were mutually agreed upon. The addition there involved was built on an adjoining lot and the court held that it was not an addition to the original building because it was not attached to it.

In Noyes v. Rothfeld, 191 Misc. 672, 78 N.Y.S.2d 433, also cited by the plaintiffs, the court properly held that the proposed demolition of an entire building with the exception of two side walls which the landlord intended to use in the construction of a new building could not be considered as an alteration of the old building. We, of course, agree with that holding, but because of the entirely different facts it cannot furnish

a usable characterization of the construction in the instant case.

In Kresge v. Maryland Casualty Co., 154 Wis. 627, 143 N.W. 668, on which the plaintiffs strongly rely, the Supreme Court of Wisconsin held only that the installation of an extra set of doors in each of the entrances to a store, which thereby created a vestibule, was neither an alteration nor an addition within the meaning of an indemnity insurance policy. The court said that the word "addition" as there used "should be held to mean enlargement or extension, so as to include additional space." The policy there in question indemnified the insured against loss by reason of injuries suffered by any person on its premises. It is understandable that the court held that the word "addition" as it was there used "should be held to mean enlargement or extension, so as to include additional space." "Addition" was used in the policy to limit the liability of the insurer against increasing the risk by the addition of space covered by the policy.

In Updike v. Skillman, 1858, 27 N.J.L. 131, 133, in discussing the meaning of the words "addition" and "alteration" as applied to a building, the court said of the word "addition" : "This is the appropriate and accustomed phrase when speaking of an additional building erected alongside of, and not under or on top of a former building. If one should say he had erected an addition to his house, he would not be understood as saying that he had put a cellar under it or a story on top of it." This decision was cited and followed by the Supreme Court of New Jersey in Lake & Risely Co. v. Still, 144 A. 110, 7 N.J. Misc. 47.

The final argument of plaintiffs as to the correct interpretation of the clause giving the defendant the right to make changes and alterations was that the power so given was limited to the "premises occupied by it." To support this contention the plaintiffs cite Western Building Co. v. J. C. Penney Co., 60 S.D. 630, 245 N.W. 909, and

Cohen v. Simon Strauss, Sup., 139 N.Y.S. 929. It is true that these cases held that the leases authorizing improvements to be made limited such improvements to the premises leased. But in each of those cases the lease covered only a part of the building in which the leased premises were located. In the instant case the lease covered the entire building as well as the ground on which the building was located.

From our examination of the cases cited in the briefs of the parties and from other cases which we have examined and considered we see that the words "change," "alteration," and "addition," when used in reference to a building, have been variously defined in the decisions of our courts. None of these words can be said to so exactly and definitely define a particular type of construction work that the one word, and it alone, can appropriately describe the 1952 construction work here in question. The plaintiffs in their letter to the defendant protesting the 1952 construction work, referred to the construction work on these premises prior to 1952 as "remodeling," and that word has been defined as such changes in a building as to make it practically a new building. Yet the plaintiffs made no objection to all that prior remodeling.

■ In this case we think there was such ambiguity in the provision of the lease giving the defendant the right to make such changes and alterations in the premises as it found necessary for its purpose that the court must determine the proper interpretation of the lease. The trial court interpreted the lease as not giving the defendant permission for the 1952 construction work. We think that interpretation under all of the facts and circumstances of this case was clearly erroneous. We hold that the defendant under the terms of this lease was permitted to do the 1952 construction work without notice to the plaintiffs and without obtaining any further consent from the plaintiffs.

In view of our interpretation of this lease, it is unnecessary for us to consider the other questions discussed in the briefs.

The judgment of the District Court is reversed and the cause is remanded with directions to enter judgment for the defendant.