■ CONTINENTAL TOWERS GARAGE CORP., Appellant, v CONTOWERS ASSOCIATES LIMITED PARTNERSHIP et al., Respondents. —Order of the Supreme Court, New York County (Andrew R. Tyler, J.), entered on or about January 26, 1988, to the extent that it denied plaintiff's motions for *Yellowstone* injunctions against defendants' termination or cancellation of plaintiff's lease, from interfering with plaintiff's right of possession of the subject premises, and from commencing any action or proceeding to recover possession of the premises or to declare plaintiff's lease to be terminated based on notices of default issued by defendants on and after August 7, 1987, unanimously reversed, on the law, the facts and in the exercise of discretion, and the motions are granted, with costs.

Since 1975 plaintiff Continental Towers Garage Corp. has operated a profitable parking garage at 301 East 79th Street in Manhattan pursuant to a lease which expires on March 18, 2000. The defendant Contowers Associates Limited Partnership acquired title to the premises in January 1987. The individual defendants are managing partners and employees of the limited partnership (hereafter defendant refers to the limited partnership). The plaintiff alleges, and the record contains considerable evidence to support its allegations, that upon assuming ownership of the premises defendant demanded that plaintiff purchase the defendant's fee interest in the premises, and when plaintiff refused, defendant embarked on a campaign of harassment to evict the plaintiff.

On August 7, 1987 defendant sent plaintiff a notice of default demanding more than $200,000 in tax escalations dating back to 1980, and threatened to reenter the premises "by force" and dispossess plaintiff "by summary proceedings or otherwise" if full payment was not made by August 12. Plaintiff moved by order to show cause before Justice Wright for a temporary restraining order (hereafter TRO) and preliminary injunction, and commenced an action against defendant for declaratory and injunctive relief, and for damages. Justice Wright issued the TRO, and the case was assigned to Justice Tyler. On August 27, the day before the scheduled hearing on the preliminary injunction, defendant acknowledged through its attorney that the August 7 notice of default was defective. The parties thereupon executed a stipulation discontinuing plaintiff's action without prejudice, pursuant to which defendant agreed to withdraw its August 7 notice of default, agreed not to bring a summary proceeding to dispossess plaintiff without appropriate notice of default pursuant to the lease, and consented to the ex parte entry of an order to show cause and TRO in the event a new notice of default was issued on the same ground as the one previously issued.

On August 28, the stipulation was filed with the court. Plaintiff claims that on that very same day its garage was invaded by two groups of men, one group apparently armed. One of the men claimed to be the "new owner" of the garage "as of yesterday". These men proceeded to rope off areas of the garage, to block the garage entrance, and to give orders to the plaintiff's employee. When the police were called, the apparently armed men abruptly left in their van. The remaining men, including the one who claimed to be the new owner, were thereafter escorted from the premises by the police. Also on the same day, the defendant issued to plaintiff another

notice of default, giving plaintiff "one last chance" to prove what right it had to park cars "as against a bona fide purchaser of the premises for value", directed plaintiff not to allow any person to park a car unless that person is "connected with the building", gave plaintiff three business days to provide proof of a $6,000,000 liability insurance policy "or your parking of any cars in the cellar space will be stopped immediately", advised plaintiff that "we are taking steps to limit parking in the cellar space to what we want to allow for persons connected with the building", and warned plaintiff that "You are not to interfere with these steps to limit the parking."

By order to show cause plaintiff moved for a second TRO, which was issued by Justice Tyler on August 28, 1987. The stipulation of discontinuance was vacated, and a date was set for a hearing on plaintiff's second motion for a preliminary injunction. Defendant argued at the hearing that the ex parte stipulation of discontinuance was improper and that plaintiff was required to commence a new action. A day later plaintiff discontinued the original action and by order to show cause commenced a new action seeking declaratory, injunctive and monetary relief. Justice Tyler recused himself without explanation, and the action was then assigned to Justice Ascione, who signed the order to show cause and issued on September 14, 1987 a TRO enjoining defendant from taking any action to terminate plaintiff's lease or interfere with the conduct of business operations at the premises, and further enjoined defendant from commencing a summary holdover or other proceeding to recover possession of the premises or to declare plaintiff's leasehold interest terminated. Defendants crossmoved for summary judgment. On October 7, 1987, counsel for both sides argued the motions before Justice Ascione, who continued the TRO pending determination of the motions.

On November 24, 1987, defendant Contowers commenced an action against plaintiff seeking $250 million in damages plus injunctive and declaratory relief raising essentially the same issues as were raised in plaintiff's action then pending before Justice Ascione. In December defendant sent three separate letters to plaintiff demanding that it surrender portions of the premises and alleging new defaults. Sometime during this period the matter was reassigned to Justice Tyler, for reasons not disclosed in the record. When on December 30, 1987 plaintiff moved by order to show cause to restrain defendant from taking any action with respect to the December default notices, Justice Tyler was on vacation, and a TRO was issued

by Justice Hughes restraining defendant from taking any action with respect to the December default letters, and tolling the cure periods contained therein.

On January 4, 1988, defendant sent plaintiff a three-day notice of cancellation of its lease for failure to comply with demands contained in a default letter dated December 8, 1987. On January 8, 1988, the return date of plaintiff's latest motion, Justice Tyler advised counsel that he would review all the papers submitted and then either reassign the action to a different Judge or render a decision himself. On January 15, 1988, defendant commenced a holdover summary proceeding in Civil Court based on its December 8, 1987 default notice and January 4, 1988 cancellation letter. Plaintiff moved to dismiss the summary proceeding on the ground that it violated the September 14 and December 30 TROs.

On or about January 19, 1988 plaintiff moved by order to show cause for a third TRO with respect to defendant's latest actions, and for an order holding defendants and their attorneys in contempt. The court took no action on the order to show cause for contempt. On January 26, 1988 Justice Tyler rendered his decision (the order being entered February 9), which denied plaintiff interim injunctive relief based on any event subsequent to the discontinuance of the plaintiff's original action on the ground that: "Interim injunctive relief in a declaratory judgment action is not appropriate when the Civil Court is in a position to promptly resolve the disputed issues and grant interim relief, if appropriate, under terms and conditions that reflect its procedures to provide immediate resolution of the issues." The remaining issues were referred for trial in the Supreme Court. The Civil Court, upon learning that the TRO's had been vacated, denied plaintiff's motion to dismiss the summary proceeding and set that matter down for trial. This court stayed the summary proceeding and reinstated the September 14 and December 30 TROs pending this appeal.

We disagree with the IAS court's conclusion that the Civil Court is able to grant appropriate interim relief to the plaintiff. Presumably, the IAS court was referring to RPAPL 753 (4) which grants to the losing tenant in a summary proceeding a 10-day stay of the issuance of the warrant, during which time the tenant may correct the breach of his lease. However, this provision only applies to premises occupied for dwelling purposes in the City of New York, and the Civil Court does not otherwise have jurisdiction to grant injunctive relief. *(Post*

*v 120 E. End Ave. Corp.,* 62 NY2d 19, 25-27; *Lew-Mark Cleaners Corp. v DeMartini,* 128 AD2d 758.)

Plaintiff urges that it has easily met the applicable test for granting *Yellowstone* relief *(First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630), to wit: (1) it holds a commercial lease; (2) it has received from the landlord a notice of default, a notice to cure, or a threat of termination of the lease; (3) the application for a TRO was made prior to the termination of the lease; and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises. *(See, Jemaltown of 125th St. v Betesh/Park Seen Realty Assocs.,* 115 AD2d 381; *Finley v Park Ten Assocs.,* 83 AD2d 537.)* Defendant does not urge that plaintiff has failed to meet this test, but rather contends that this appeal is from an order denying reargument, and that the lease has already been canceled because of a default as to which no motion for injunctive relief was made by the plaintiff.

We find the defendant's arguments to be without merit. The record demonstrates clearly that plaintiff was entitled to *Yellowstone* injunctions. Accordingly, the order is reversed to the extent appealed from, and the temporary restraining orders issued on September 14 and December 30, 1987 are reinstated, nunc pro tunc. Concur—Sandler, J. P., Asch, Kassal, Rosenberger and Wallach, JJ.