CHARLES GARLAND et al., Appellants, v TITAN WEST ASSOCI-
ATES et al., Respondents.

First Department, June 20, 1989

APPEARANCES OF COUNSEL

*David Rosenbaum* of counsel *(Maggie Casola* with him on the brief; *Novick, Edelstein, Lubell, Reisman, Wasserman & Leventhal, P. C.,* attorneys), for appellants.

*Marcia P. Hirsch* for respondents.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiffs are the tenants of store premises located in upper Manhattan under a written lease with the landlord's predecessor for a term commencing January 1, 1985 and expiring December 31, 1999. Paragraph 28 of the lease grants them the right to assign or sublet the demised premises without the landlord's consent, subject to the landlord's right of first

refusal, which must be exercised within 30 days.* The lease further provides that neither plaintiffs nor their assignees or sublessees are to make any alterations to the premises without the landlord's written consent.

On or about May 5, 1987, plaintiffs sublet the premises to Taft Pharmacy, Inc. for a period beginning June 1, 1987 and ending November 30, 1999. Plaintiffs allege that before executing the sublease they forwarded a copy to the landlord's attorney, who had played an active role in the more than six months of negotiations between them and the proposed subtenant. Although its attorney, by letter dated May 7, 1987, insisted on the inclusion of a rider providing for the pro rata sharing of the expense of any sidewalk or storefront replacement between the landlord and sublessee, the landlord never objected to the sublease, nor attempted to exercise its right of first refusal.

After taking possession, Taft Pharmacy made certain improvements to accommodate the premises, which had been used by plaintiffs as a real estate office, to its new use. It installed new lighting fixtures, wall covering and drop ceiling, replaced a vinyl floor covering, and removed two non-weight-bearing partitions. Apparently, sometime thereafter, Taft Pharmacy either assigned its sublease to Amsterdam Pharmacy and Drugs, Inc., as the landlord claims, or, as plaintiffs contend, entered into an operating agreement with Amsterdam Pharmacy.

On or about October 5, 1988, the landlord served plaintiffs with a notice to cure, alleging, as lease violations, that plaintiffs had assigned and/or subleased the subject premises to Amsterdam Pharmacy without affording it the right of first refusal and that the assignee or subtenant had made alterations without obtaining its written permission. The notice required plaintiffs to cure on or before October 15, 1988.

On October 12, 1988, plaintiffs commenced this action, seeking a declaration that the sublease was in accordance with the lease terms, that any violation caused by an assignment of the sublease to Amsterdam Pharmacy had been cured by an agreement between the parties thereto voiding said assignment, and that the repairs to the demised premises were cosmetic only and did not constitute alterations. Appar-

---

* Insofar as is relevant, paragraph 28 provides: "In the event of a proposed assignment or sub-lease, the owner shall have a right of first refusal for a thirty day period. Such right shall recur on each such occasion."

ently, the principal officers of Amsterdam Pharmacy and Taft Pharmacy, who are the same, have occupied and maintained the premises as a pharmacy in the name of Amsterdam Pharmacy. Simultaneously with the commencement of the action, plaintiffs, by order to show cause which temporarily provided such relief pending the hearing of the application, moved for a *Yellowstone* injunction staying termination of the lease and tolling the running of the cure period.

■ After joinder of issue, the court, without addressing the merits of the application, granted *Yellowstone* relief for a 60-day period, during which the parties were to attempt to resolve their differences. If the matter were not resolved, the motion would be denied, unless renewed by plaintiffs. Without waiting for the 60-day period to run, apparently because of the absence of any prospect of a disposition by the parties, plaintiffs appealed and now request this court to grant them *Yellowstone* relief pending resolution of the matter on the merits. We modify to grant the preliminary injunction as sought.

The purpose of a *Yellowstone* injunction is to maintain the status quo so that the tenant served with a notice to cure an alleged lease violation may challenge the propriety of the landlord's notice while protecting a valuable leasehold interest. *(First Natl. Stores v Yellowstone Shopping Center,* 21 NY2d 630; *Ameurasia Intl. Corp. v Finch Realty Co.,* 90 AD2d 760; *Podolsky v Hoffman,* 82 AD2d 763.) The grant of *Yellowstone* relief effectively tolls the running of the cure period so that in the event of an adverse determination on the merits the tenant may still cure the defect and avoid a lease forfeiture. *(Post v 120 E. End Ave. Corp.,* 62 NY2d 19; *Wilen v Harridge House Assocs.,* 94 AD2d 123.)

In granting *Yellowstone* injunctions to avoid a forfeiture of the tenant's interest, courts have generally accepted far less than the showing normally required for the grant of preliminary injunctive relief. *(Post v 120 E. End Ave. Corp., supra,* 62 NY2d, at 25.) Thus, a tenant seeking to avoid forfeiture of its lease is less likely to be required to demonstrate a likelihood of success, irreparable injury, and a balancing of the equities in its favor, as those terms are traditionally understood. *(Supra; see, Ameurasia Intl. Corp. v Finch Realty Co.,* 90 AD2d 760, *supra; Finley v Park Ten Assocs.,* 83 AD2d 537, 538; *Podolsky v Hoffman,* 82 AD2d 763, *supra.)* The mere threat of termination and forfeiture of the lease has been held sufficient

to justify maintenance of the status quo by injunction. *(Post v 120 E. End Ave. Corp., supra,* at 26.)

We find that plaintiffs have shown their entitlement to *Yellowstone* relief by demonstrating that they hold a valuable commercial lease; that they received a notice to cure; that they requested injunctive relief prior to the termination of their lease; and that they are prepared and maintain the ability to cure the alleged default by any means short of vacating the premises. *(See, Continental Towers Garage Corp. v Contowers Assocs. Ltd Partnership,* 141 AD2d 390; *see also, Jemaltown of 125th St. v Leon Betesh/Park Seen Realty Assocs.,* 115 AD2d 381; *Finley v Park Ten Assocs.,* 83 AD2d 537, *supra.)* They have a substantial property interest in their lease. Equity demands that their right to cure be preserved so that if they prevail on the merits their success will be more than a hollow victory. *(Wuertz v Cowne,* 65 AD2d 528; *Podolsky v Hoffman, supra.)*

■■ Rather than grant the requested relief, however, the motion court ordered a 60-day preliminary injunction so that the parties might, on their own, resolve the matter. This was error since plaintiffs, at the very least, made a prima facie showing that they were not in violation of their lease, and of their entitlement to an opportunity to cure if indeed any violation existed. The interests of justice would best be served by granting the requested *Yellowstone* injunction pending a judicial determination of the issues. Insofar as can be discerned, the landlord will not be aggrieved, nor suffer any measure of perceptible damage, if enjoined from terminating the lease until plaintiffs have their day in court.

Moreover, the motion court's imposition of a 60-day limitation on the grant of *Yellowstone* relief, however well intentioned, itself creates undue delay which benefits neither side because, had plaintiff not sought relief in this court, the parties, unable to reach a mutually agreeable resolution, would find themselves waiting for the expiration of the 60-day period and the inevitable renewal motion for full *Yellowstone* relief. Thus, the decision tends to spawn further motions and to place an additional burden on the judicial system.

■ As already indicated, plaintiffs have made a sufficient showing on the merits. They first apprised the landlord, in writing, of their intention to sublet the premises on or about December 17, 1986. Although the parties thereafter corresponded with each other with respect to the sublease up until

at least July 1, 1987, the landlord never attempted to exercise its right of first refusal. The sublease agreement in question was signed on or about May 5, 1987.

The landlord points to paragraph 3 of the Taft Pharmacy sublease, which provides that the tenant shall, upon execution of the sublease, furnish the landlord with an executed copy thereof. Should the landlord thereafter exercise its right of first refusal within the 30-day period, the sublease shall be rendered null and void. Thus, the landlord argues that as a precondition to the exercise of its right of first refusal, it must first be formally offered a copy of the executed sublease.

As is clear from a reading of the sublease, the parties never intended to confer any benefits on the landlord, and it derives no rights therefrom. Thus, it cannot be a third-party beneficiary. (See, Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 655.) Its involvement with the sublease derives solely from the lease and is strictly limited to its right to express disapproval of the sublease within 30 days by exercising its right of first refusal. The lease fails to specify any preconditions to the running of the 30-day period. Since approximately 120 days passed between the time when the landlord was first informed of the proposed sublease and the execution thereof, the 30-day period had long expired when it first asserted its first-refusal rights.

In any event, plaintiffs' attorneys, as requested, sent a copy of the proposed sublease to the landlord's attorney on or about April 9, 1987. The latter responded by insisting upon the inclusion of a certain rider, which, by letter dated July 1, 1987, plaintiffs returned in executed form. Thus, even if, despite the absence of such requirement therein, the lease were construed as requiring that the tenant first furnish the landlord with an executed copy of the sublease before the 30-day period could being to run, there is at least an issue of fact as to whether receipt of the executed rider satisfied that precondition, especially since the landlord's only suggestion with respect to the proposed sublease was the request for the addition of the rider.

Insofar as the claim of unauthorized alterations is concerned, it appears that the subtenant has, at most, effectuated certain cosmetic improvements at the premises, none of which qualifies as an alteration. Paragraph 4 of the lease provides that "the Tenant, successors, heirs, executors or administrators shall not * * * make any alterations on the premises, without the Landlord's consent in writing".

In *Harar Realty Corp. v Michlin & Hill* (86 AD2d 182), this court interpreted an identical lease provision: "A lease provision that a tenant may not make alterations without the landlord's consent is, however, 'only an undertaking imposed by law, which is to the effect that any material and substantial change or alteration of the nature of the property is waste.' * * * Thus, a tenant 'is at liberty to erect structures for the purpose of carrying on his legitimate business upon the demised premises and remove them within the term, unless the effect will be to commit waste or to do serious injury to the realty.' * * * This is true even where, as here, the lease has a provision that alterations may not be made without the landlord's consent." *(Supra,* at 185-186.) The impingement upon the reversionary estate of the landlord is the keynote to the definition of waste. *(Rumiche Corp. v Eisenreich,* 40 NY2d 174, 179.) Thus, whether the improvements effectuated by plaintiffs constitute alterations turns on whether they changed the nature and character of the demised premises so as to constitute waste.

From this record, it appears that the improvements to the premises were cosmetic only, and necessary to carry on the sublessee's business. The painting of a preexisting sign, the replacement of the old vinyl floor covering, the installation of new wall covering, drop ceiling tiles and shelves, the removal of two nonweight bearing partitions and the installation of new lighting fixtures do not entail any substantial change or alteration of the property. Any installation is capable of removal, and any removal subject to restoration without substantial injury to the premises. *(Frequency Elecs. v We're Assocs. Co.,* 120 AD2d 489; *see, N. & S. Decor Fixture Co. v V.J. Enters.,* 57 AD2d 890.) Thus, the landlord's consent was not required.

Finally, plaintiffs contend that the notice to cure, which refers to a sublet to Amsterdam Pharmacy, is ambiguous in that it is unclear as to which relationship is questioned. As clearly stated in the sublease agreement, plaintiffs sublet to Taft Pharmacy, whose principals, it is alleged, are the same as those of Amsterdam Pharmacy. Plaintiffs claim that any relationship that existed between these two entities with respect to the demised premises was merely an operating agreement, rather than a sublease.

To be effective a notice to cure in holdover proceedings must be unequivocal and unambiguous. *(See, e.g., Chinatown Apts. v Chu Cho Lam,* 72 AD2d 532, *affd* 51 NY2d 786;

*Filmtrucks, Inc. v Express Indus. & Term. Corp.,* 127 AD2d 509.) Since it is unclear as to whether the landlord is objecting to the sublease, a copy of which it was furnished in April of 1987, or to an alleged assignment or operating agreement between Taft Pharmacy and Amsterdam Pharmacy, the efficacy of the notice to cure is at issue. This affords an additional reason for the granting of *Yellowstone* relief. In any event, any lease violation based on such use of the premises is curable, and plaintiffs have indicated a willingness to cure after a determination has been made on the merits.

Accordingly, the order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered December 15, 1988, granting plaintiffs' motion for a *Yellowstone* injunction for a period of 60 days, should be modified, on the law and on the facts and in the exercise of discretion, to the extent of granting the motion pending determination of the instant action and, except as thus modified, affirmed, with costs and disbursements to plaintiff.

CARRO, MILONAS and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 15, 1988, unanimously modified, on the law and on the facts and in the exercise of discretion, to the extent of granting the motion for a *Yellowstone* injunction pending determination of the instant action and, except as thus modified, affirmed. Appellants shall recover of respondents $250 costs and disbursements of this appeal.