*955 OPINION OF THE COURT
David B. Saxe, J.
This dispute involves a planned office/hotel/retail complex on a 100-acre site located in Yonkers, New York, being developed by defendant Morris Industrial Builders (MIB), to be known as the Westchester Corporate Center. Although it has been in the planning stages for close to a decade, construction of the complex has not yet gotten off the ground. The over-all plan for the development included a multiplex movie theater, and accordingly, in October 1988, MIB and RKO entered into a lease agreement under which plaintiff, RKO Century Warner Theatres, Inc. (RKO), agreed to build and operate a movie theater.
RKO has not taken possession of the property, nor has it had to make any rental payments, because to date no construction has occurred. The parties persist in disagreeing over certain preliminary matters, such as whether MIB has presented a proper master plan for the development, and if so whether RKO has provided appropriate detailed plans and specifications for the construction. It has been over eight years and the lease term has not commenced.
MIB alleges that in 1993 it provided a master plan for the project, pursuant to the provisions of the lease, and requested that RKO submit in return its detailed plans and specifications. RKO contends that the master plan was inadequate and that nonetheless it submitted plans and specifications in conformity with the terms of the lease.
The parties have tried, unsuccessfully, to renegotiate the lease, but a new lease was never agreed to; MIB and RKO have had fundamental disagreements as to the size and structure of the theater to be constructed.
In this action RKO seeks a declaratory judgment with respect to a letter sent to RKO by MIB dated October 23, 1996; the letter stated, inter alia: "It is our unequivocal position that no lease exists at present between your company and ours. In the first place, your performance under the Lease is hopelessly delinquent and, therefore, either the Lease was terminated as a result of your many years of non-compliance or this letter will serve as a notice of termination based on the numerous default notices you have received. To the extent the latter is applicable, you are hereby notified that, as a result of your numerous defaults, the Lease is hereby terminated.” RKO seeks a judgment (1) declaring the above letter to be of no force *956 and effect, and (2) enjoining defendant from taking any steps consistent with a terminated lease.
Plaintiff RKO moves pursuant to CPLR 6301 for a Yellowstone injunction enjoining defendant MIB from terminating the lease between the parties. MIB cross-moves to dismiss the action under CPLR 3211 (a) (1), (7) for failure to state a cause of action and pursuant to a defense based on documentary evidence.

Restraint on Alienation

Initially, MIB contends that the 1988 lease is an instrument which imposes an unreasonable restraint on alienation and is void as a matter of law. RKO argues that the lease may be terminated by MIB at any time in the case of a default in the lessee’s performance, by properly following the notice procedures set forth in the lease, which plaintiff claims was never done in this case.
MIB relies on the rule that an instrument conveying property, which imposes an unreasonable restraint on alienation, is void as a matter of law (Omath Holding Co. v City of New York, 149 AD2d 179 [1st Dept 1989]). MIB equates the circumstances of the Omath Holding case with the facts presented here. However, there is a critical difference. The Omath case concerned a lease which provided for the commencement of the lease term upon rezoning of the property, and contained no provision for cancellation in the event the property was not rezoned. Clearly under such circumstances, the lessee would possess a contingent leasehold interest which would exist indefinitely, without the fee owner having any right or ability to terminate the lease or retake possession of the property. Importantly, the contingency in that case was something over which the parties did not have ultimate control.
In contrast, the lease here sets forth the obligations of each party, and while the question of whether they have satisfied those obligations may need to be decided in court, there is no outside agency whose action or inaction can interfere with the parties’ ability to carry out the terms of the contract.
Thus, the cross motion to dismiss on the ground that the lease is void as an unreasonable restraint on alienation is denied.

Yellowstone Injunction

MIB also argues as a threshold matter that because RKO’s tenancy on the site has not yet begun, First Natl. Stores v Yel *957 lowstone Shopping Ctr. (21 NY2d 630) does not apply, and RKO is not entitled to a Yellowstone injunction. It points to the absence of any cases granting such injunctions where the tenant under the lease has not yet taken possession.
MIB suggests that Yellowstone (supra) is inapplicable because the purpose of such an injunction is to protect a commercial tenant in possession from being evicted from the demised premises while it challenges a default notice. However, the purpose of Yellowstone injunctions has been stated as protecting a valuable leasehold and preventing a risk of forfeiture of the tenant’s interest (see, Stuart v D & D Assocs., 160 AD2d 547 [1st Dept 1990]). As so stated, this purpose is as applicable to a prospective commercial tenancy as it is to a present one.
In order to be granted a Yellowstone injunction, a plaintiff must demonstrate that (1) it holds a commercial lease; (2) it has received from the landlord a notice of default, a notice to cure or a threat of termination of the lease; (3) the application is made prior to the termination of the lease; and (4) it has the desire and ability to cure the alleged default by any means short of vacating the premises (see, Continental Towers Garage Corp. v Contowers Assocs. Ltd. Partnership, 141 AD2d 390).
RKO clearly holds a commercial lease, and I have already rejected MIB’s argument that the lease is void as a restraint on alienation. I must therefore address the question of whether the lease was terminated, or whether the plaintiff was served with a notice of default prior to termination.
The lease contains specific provisions regarding termination. Paragraph 45 of the lease provides that "If Tenant shall fail * * * (ii) to correct any default with respect to Paragraph 14 hereof within five (5) days after notice of such default * * * or (iv) to keep, observe or perform any of the other terms, covenants and conditions herein to be kept, observed and performed by Tenant for more than thirty (30) days after notice shall have been given to Tenant specifying the nature of such default * * * Landlord shall have the immediate right to re-enter * * * and to dispossess Tenant”. The defaults now cited by MIB consist of (1) RKO’s alleged failure to provide sufficiently detailed and specific "preliminary detailed plans and specifications” within 60 days of its receipt of MIB’s master plan, and (2) RKO’s failure to maintain in existence the security deposit required by the lease.
"A notice of termination must be a clear, unambiguous, and unequivocal notice of limitation; it must clearly by its terms *958 provide for automatic expiration of the leasehold and convey this fact to the other party” (2 Rasch, New York Landlord and Tenant — Summary Proceedings § 23.28, at 204 [3d ed]).
The October 23, 1996 letter stated that "either the Lease was terminated as a result of your many years of noncompliance or this letter will serve as a notice of termination based on the numerous default notices you have received.” Thus, even MIB was unable to point to a clear and unequivocal prior notice of termination, denominated as such, containing the requisite cure period.
Furthermore, an independent examination of the notices MIB sent prior to October 1996 demonstrates that those notices did not successfully terminate the lease. Years earlier, on January 11, 1994, MIB sent RKO a letter indicating its belief that RKO was in default of its obligation to submit "preliminary, detailed plans and specifications.” A follow-up letter dated February 16, 1994 did the same. However, neither letter purported to give notice of termination; they merely gave notice of an asserted default and an intent to hold RKO responsible for any money damages resulting. Indeed, as RKO points out, subsequent letters concerning attempts to renegotiate the deal did not make reference to any possibility of termination, but rather, repeatedly stated that the existing lease remained in full force and effect.
The lease, therefore, has not been successfully terminated to date.
All the required elements for a Yellowstone injunction have been demonstrated: plaintiff holds a commercial lease, it has received a purported notice of termination, but the lease has not yet terminated, and if it is found to be in default, which it disputes, it has the desire and ability to cure the default.
Accordingly, it is ordered that the cross motion to dismiss the complaint is denied, and it is further ordered that the motion for a Yellowstone injunction is granted.